## Candelore *v.* Glauser, Appellant.

*Appeals—New trial—Refusal of new trial—Abuse of discretion —Perjury of plaintiff after-discovered.*

It is an abuse of discretion, requiring a reversal of the judgment on a verdict, for the trial court to refuse to grant a new trial, where it appears by incontrovertible evidence, obtained after the

trial, that the verdict was rendered, or materially enhanced in amount, by reason of the perjury of the litigant in whose favor it was entered.

Argued December 6, 1927.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 265, Jan. T., 1927, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1925, No. 2673, on verdict for plaintiff, in case of Dominic Patsy Candelore v. Frank Glauser.    Reversed.

Trespass for personal injuries.    Before AUDENRIED,

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,000.    Defendant appealed.

*Error assigned,* inter alia, was refusal of new trial, quoting record.

*Wm. W. Smithers,* for appellant.—It was an abuse of discretion to refuse a new trial in face of the depositions establishing plaintiff's perjury, tainting the essentials of the trial, causing a misleading charge and resulting in a grossly excessive verdict.

*Samuel Melnick,* for appellee.—A new trial will not be granted because of after-discovered evidence which tends merely to impeach a witness, particularly when such evidence was available long before the trial: McEvoy v. Cab Co., 267 Pa. 527; Gazzam v. Reading, 202 Pa. 231; Lebanon Ins. Co., v. Erb, 112 Pa. 149.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1928:

At the trial of this case, which was brought to recover damages for personal injuries alleged to have resulted from defendant's negligence on January 24, 1925, the

testimony of plaintiff, so far as it is relevant to the single point upon which we shall decide the case, is as follows:

"Q. As a result of these injuries were you out of work? A. Yes. Q. For how long? A. Four months...... Q. And you were out of work four months you say? A. Yes. Q. After the four months you returned to work at what place? A. I tried to get my job in the print works in Eddystone, but I cannot do that job. Q. You tried to get the same job back? A. I can't do it...... Q. What did you do after that? Did you get another job? A. I got to go to Massachusetts......Q. Before the accident happened when you worked in this factory, when you tended the paint to the machine, what were you making a week? A. I make $35 a week regular. ......Q. What do you make a week [now]? A. About $22 or $23 a week. Q. Have you ever made $35 a week since the accident? A. No make $35 straight time. Q. That was before the accident you made $35? A. Yes. Q. Since the accident did you ever make that? A. Oh, no......[Cross-examination] Q. You are working for the General Electric Company, are you not? A. Now. Q. And you have been since the 18th of May, 1925, is that right? A. Yes......Q. And you have been working right along up there except you were out sick one week in November, 1925, weren't you? A. Yes."

Plaintiff recovered a verdict; defendant moved for a new trial; the court gave leave to take depositions in support thereof, and the records kept by the Eddystone Manufacturing Company, where plaintiff was employed before the accident, showed that he returned to work with that company, instead of it being true, as he testified at the trial, that he could not do the work there; also that he was absent from work for only one month after the accident, instead of four months; that his wages after the accident were the same as they had been before, and so continued until he voluntarily left on May 9, 1925, and went to work in Massachusetts nine days

later. There was no attempt made to controvert this record evidence, nor is its accuracy now disputed, though there is a futile attempt to argue, without proof, that Dominico Candelore and D. Candelore, as the name appeared in those records, may not have referred to plaintiff, since his name, as given in this suit, is Dominic Patsy Candelore. The court below refused the motion for a new trial, granted an exception to its order, and that refusal, inter alia, is assigned as error on this appeal by defendant.

At the bar of this court, defendant urged that the testimony above quoted shows that plaintiff committed deliberate perjury when he testified as to his wages before and after the accident, and as to the time he was out of work because of it. Upon this point the court below said: "The fact that he [plaintiff] intended to commit perjury is by no means certain. He is rather stupid, and a foreigner by birth, understanding and speaking the English language with some difficulty." It is not possible, however, to read the foregoing extracts from his testimony,—which we have quoted in order that there might be no question regarding it,—and believe that what the court below said respecting him really explains that testimony. It is easy to understand how one who has been injured can, by constantly mulling over it, convince himself that he has been grievously hurt, and is not to blame for it, though neither of these things is true; but the basic reasons which explain such aberrations do not exist here. Nor is this a case where the witness was led into making incorrect statements by the form of questions propounded to him; on the contrary, plaintiff, without a suggestion of any kind, fixed, in definite figures, the length of time he was absent from work and the wages he received before and after the accident, and stated that he was not able to return to his old job. It is greatly to be regretted, if—because, in the words of the court below, "he is rather stupid, and a foreigner by birth, understanding and speaking the

English language with some difficulty,"—he should have apparently acted on the belief that he need not "tell the truth, the whole truth and nothing but the truth," when testifying upon points which, if he had stated the real facts, would have tended to reduce the amount of his claim, but this cannot excuse a violation of his oath as a witness, or justify him in recovering from defendant a sum greater than he would have obtained had he told the truth. The reason given by the court below might, perhaps, be available in the criminal court, under the merciful rule, applicable to that tribunal only, that no defendant is to be convicted unless his guilt is shown beyond a reasonable doubt; but with that we are not now concerned.

We cannot shut our eyes to the fact that what occurred in this case has become so common as to be a public scandal, requiring us to hold, as we now do, that it is an abuse of discretion, requiring a reversal of the judgment on a verdict, for a trial court to refuse to grant a new trial where it appears, by incontrovertible evidence obtained after the trial, that the verdict was rendered, or materially enhanced in amount, by reason of the perjury of the litigant in whose favor it was entered.

We have carefully considered all the authorities alleged by appellee to antagonize this conclusion, but do not deem it necessary to review them at length. Most, if not all, of them are distinguishable because of differing facts or of a different status from that appearing here. For instance, in Gazzam v. Reading, 202 Pa. 231, 237-8, defendant sought to have the court below open a judgment which had been affirmed by this court, in a case where the plaintiff had not testified at the trial; and in Peterman v. Enggasser, 280 Pa. 528, it appeared that, since the evidence "merely tends to impeach the credibility of the plaintiff as a witness, and involves collateral matters with but an incidental bearing on the question involved, [it] is not ground for a new trial."

In McEvoy v. Quaker City Cab Co., 267 Pa. 527, also cited by appellee (who apparently overlooks the first part of the quotation about to be made, however), where also it was sought to have the court below open a judgment which had been affirmed by us, matters cognate to that now under consideration were dealt with at some length, and, quoting from 15 R. C. L. 768, we said at pages 531-532: "The obtaining of a judgment by wilful and corrupt perjury undoubtedly amounts to fraud, and the intentional production of false testimony will usually justify the annulment of a decree or judgment which is the product of such testimony......But wherever equity will interfere it will do so only where the perjury is established beyond all reasonable controversy by evidence clear, convincing and satisfactory, and it seems to be a sound rule that relief cannot be had *against a judgment* in any event on the ground of perjury, unless it can be shown that, but for the perjury, the result would have been different......Courts of equity *may* refuse to grant relief on account of perjured testimony, if the question whether the testimony was perjured could have been tried in the former case by the use of due diligence." Whether or not, in the present case, defendant could have obtained the proof now produced, between the time plaintiff perjured himself at the trial and the closing of the evidence therein, is a matter of doubt; but whether it could or could not, the question here is not, as it was in McEvoy v. Quaker City Cab Co., whether a judgment duly entered and affirmed by this court, should be opened thereafter, because of perjury in the original proceeding, but whether the court below should have entered the judgment, when "the perjury is established beyond all reasonable controversy by evidence clear, convincing and satisfactory," the effect of which necessarily enhanced the amount of the verdict.

None of the authorities cited by appellee really antagonizes the conclusion reached by us in the present

case; but, if we thought they or any of them did, we would nevertheless assert that conclusion, for public policy imperatively demands at this time that litigants and their counsel should alike be advised that, so far as the courts can control the matter, justice will not permit perjury to result in gain to the perjurer.

We purposely refrain from considering the other points raised by the assignments of error. They will be decided, when, if ever, it becomes necessary so to do.

The judgment of the court below is reversed and a venire facias de novo awarded.