## Crouse v. Volas, Appellant.

Argued December 17, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Israel Krohn,* for appellant.

*J. Willard Paff,* of *Smith & Paff,* for appellee.

OPINION BY CUNNINGHAM, J., April 22, 1935:

On March 30, 1932, plaintiff, Frank Crouse, brought suit as the payee of a promissory note against the defendant, George C. Volas, as one of the makers. The note reads:

Easton, Pa.

"400 00/100                    May 6th, 1930.

Ninety Days after date I promise to pay to the order of    Frank Crouse

Four hundred .....................00/100 Dollars

Payable at

Without defalcation, for value received

No. Due

Geo. C. Volas                    Alex Cochios

[Endorsement on back]

George Volas."

The case for the plaintiff consisted of the production of the note and the supporting testimony of the plaintiff and that of Alex Cochios, the other maker, against whom no suit was brought. The result of the trial was a verdict in favor of the plaintiff for the amount of the note, with interest. Defendant's mo-

tions for a new trial and for judgment n. o. v. were denied and he now appeals from the judgment entered upon the verdict.

As the purported signature of the appellant appears both upon the lower left-hand corner of the face of the note and upon its back and as the note was not presented for payment when due or notice of dishonor given, his counsel argue that the trial judge erred in charging: "I say to you as a matter of law that the manner in which this note, Exhibit No. 1, was drawn, and where there is no place of payment provided for on the note itself, this suit is brought against a maker, and under the circumstances it is not necessary for the plaintiff to present that note at the time when it was due." We deem it unnecessary to consider the assignments based upon alleged errors in the charge. The substantial defense of appellant was that he never signed, or authorized any person to sign, his name either upon the face or upon the back of the note and that both of his purported signatures are forgeries. As we view the case, the controlling question involved upon this appeal is whether the court below abused its discretion in refusing to grant a new trial, particularly under certain circumstances which developed after the entry of the judgment and to which we shall refer later. A brief history of the case is essential to an understanding of the significance of the subsequent events.

The general story of Crouse, the plaintiff, and Cochios, for whose benefit the note was given, was to the effect that Crouse was a farmer living at Alpha, New Jersey, and for a number of years had been selling produce, etc., to Cochios, a restaurant keeper in Easton, Pa. Volas, the appellant, was employed irregularly at the restaurant. Cochios had borrowed money from time to time from Crouse and theretofore paid his notes. In May, 1930, Cochios was

pressed for money and testified that he filled out the note in suit, signed it, and sent Volas on May 6th to Crouse to get the money. Crouse testified that Volas came down to his farm with the note, but he (Crouse) told him he would not lend the money unless Volas would sign the note "as maker and endorser," and arranged to meet Volas and Cochios at the restaurant several days later. Crouse said he came to the restaurant on May 8th, and as the three of them sat around a table he saw Volas write his name on the left-hand corner of the face of the note and also on the back.

Cochios, testifying as a witness for Crouse, identified his signature to the note and stated positively that he saw Volas write his name upon the front of the note "to the left of" the signature of the witness and that he saw Volas write his name on the back of the note and deliver it to Crouse. Later, he qualified his statement that he had seen Volas write his name on the back as follows: "Q. And you say you saw him write his name on the back? A. I don't remember that, I didn't look so particularly I was waiting on other business."

On cross-examination, however, he admitted that his statement in his direct testimony was untrue. A portion of his cross-examination reads: "Q. You answer the question now: the question is—did you see George Volas sign his name to this paper, Exhibit No. 1, answer yes or no? A. Long delay — no answer. By the Court: Q. Did you see him sign it? A. No. I seen the note, that's all. By Mr. Krohn: Q. Then you didn't know and you cannot testify in this court now, that George Volas put his name to this paper, Exhibit No. 1, can you? A. No." It was not controverted that the note was given for the sole benefit of Cochios, to whom Crouse gave his check for $400.

In his affidavit of defense, Volas denied positively

that he ever executed, indorsed or delivered the note and averred that his purported signatures thereon were forgeries. His testimony at the trial was an absolute and unqualified denial that he ever placed his name upon the face or the back of the note, and an equally positive denial that he was with Crouse and Cochios in the restaurant as testified to by them. His only connection with, or knowledge of, the note, according to his testimony, was that in the latter part of April, 1930, he, at the request of Cochios, carried a sealed envelope to Crouse at the farm of the latter and when Crouse opened the envelope Volas noticed it contained a note and a message. His testimony continued: "Q. After you saw Crouse, tell us what conversation you had? A. After Crouse opened the letter he said to me 'if you sign the note I will leave you have the money.' Q. And what did you say? A. I said I wouldn't sign the note or indorse it for any consideration."

His further testimony was that he brought the note back to Cochios and left it with him, and that the first time he ever heard that his name appeared upon it was in April, 1931, when he immediately repudiated his alleged signatures.

There was contradictory evidence with respect to whether the father of Crouse was present at the interview at the farm between Crouse and Volas, and there was expert testimony by an employe of the bank at which Volas did business to the effect that he was familiar with the signature of Volas and that, in his opinion, the purported signatures of the latter upon the note were forgeries.

The verdict was rendered on May 15, 1934, and on August 13th, before the expiration of the term, Volas presented his petition to the court below averring that since the entry of the judgment thereon he had procured from Alex Cochios an admission, in writing,

that he had perjured himself at the trial, and a statement that Crouse had also been guilty of perjury. The petition was supported by the following affidavit executed by Cochios on August 2, 1934:

"Alex Cochios, being duly sworn according to law deposes and says that on or about May 6, 1930 I executed a 90-day promissory note in the amount of Four Hundred ($400.00) Dollars in favor of Frank Crouse, which note, bearing the name of George C. Volas on the front and back thereof, I delivered to the said Frank Crouse on or about the date thereof; that the alleged signature of George C. Volas thereon was not placed thereon by the said George C. Volas, or by his direction, but the same was written thereon by one, Nick Kappas, who signed the name of George Volas thereon at my request and suggestion, for the purpose of obtaining the loan of Four Hundred ($400.00) Dollars from the said Frank Crouse, and in the firm belief that I could pay and satisfy the said loan within 90 days; that the said Nick Kappas, at the time referred to, was in my employ as a cook at the place of business operated by me at the northeast corner of Second and Northampton Streets in the City of Easton, County and State aforesaid; that after the said note was signed by me and the signature of George Volas written thereon by the said Nick Kappas, I mailed the said note to the said Frank Crouse, who subsequently advanced the money thereon, by calling at my place of business and handing me a check for the sum of Four Hundred ($400.00) Dollars; that when Crouse called at my place of business and handed me the check, George Volas was not present, nor did he benefit by the transaction in any way; that I do not know the present whereabouts of Nick Kappas, but I believe him to be somewhere in the State of Virginia; that this affidavit is made of my own free will, and in the interests of justice."

The prayer of the petition was that the judgment be vacated, motion for a new trial reinstated, and appellant given leave to assign as additional reasons in support of the motion the false and perjured testimony of Cochios and of the plaintiff at the trial.

The petition was denied upon the ground that it did not "set forth a case sufficient to show that the judgment was obtained by ...... 'any fraud, extrinsic and collateral to the matter involved in the original cause.' "

The concluding paragraph of the opinion below reads: "Relying upon the principles of law as set forth in 15 R. C. L., Section 157, page 705, and Sections 221, 222 and 223, page 768; 34 C. J. Section 497, page 284, and Section 744, page 475; McEvoy v. Quaker City Cab Co., 267 Pa. 527-534; Sallada et al., v. Mock et al., 277 Pa. 285, the rule as prayed for in the petition is denied."

In our opinion, the rule invoked by the court below is not applicable to the situation developed in this case and the authorities relied upon do not justify the denial of the petition.

In Sallada et al. v. Mock et al., supra, the effort was to open a judgment in ejectment after the term upon the ground that plaintiffs committed a fraud and imposed on the court at the trial by claiming that a check, offered in evidence, was a payment when in fact it was a loan. It was said in the opinion that it would disturb the integrity of judgments and unduly prolong litigation if, after *term time,* they were to be opened because of misstatements, fraud or perjury in items of evidence, especially when not vital.

In McEvoy v. Quaker City Cab Co., supra, the judgment in a personal injuries case in favor of the plaintiff had been affirmed by the Supreme Court. Although the refusal of the court below to open it was affirmed, the Supreme Court said: "We are not to be

understood as questioning the power of the court that rendered such judgment to open it and grant a new trial upon proper cause shown, even where the sole allegation is that it was procured by false swearing of a witness.''

Again, in Friedland v. Altoona & Logan Valley Elec. Ry. Co., 65 Pa. Superior Ct. 433, the discharging of a rule to open was affirmed upon the ground that the plaintiff had not been a party to the perjury. But it was there said that, ''in the exercise of its equitable powers, the court will reach far to prevent the triumph of fraud.''

Here, the averment is that the plaintiff was equally guilty with his witness of wilful and corrupt perjury concerning the vital point in the case. The petition was not to annul the judgment but merely to vacate it for the purpose of reinstating the motion for a new trial. It was presented promptly after the discovery of the perjury and within the term.

These considerations bring this case within the principles announced in Lipkin v. American Ice Co., 90 Pa. Superior Ct. 303, and Candelore v. Glauser, 291 Pa. 582, 140 A. 525.

In the former it was held: ''In trespass to recover damages resulting from the collision between two horse-draw vehicles, it was error not to grant a new trial where the only witness for the plaintiff who testified to the essentials of the occurrence, admitted that he testified falsely concerning material facts, and it being impossible to separate the false from the true in his testimony. In such case it was an abuse of discretion to refuse defendant's motion for a new trial, and judgment in favor of the plaintiff will be reversed.''

In the latter, the authorities here relied upon by the court below were considered and distinguished and this ruling made by our Supreme Court: ''It is an

abuse of discretion, requiring a reversal of the judgment on a verdict, for the trial court to refuse to grant a new trial, where it appears by uncontrovertible evidence, obtained after the trial, that the verdict was rendered, or materially enhanced in amount, by reason of the perjury of the litigant in whose favor it was entered."

In the light of these authorities, we conclude that the court below abused its discretion in refusing to entertain the petition and grant a new trial.

Judgment reversed with a venire.