## McDermott, Appellant, *v.* Marlow et al.

Argued October 3, 1939.　Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Edward O. Spotts, Jr.,* for appellant.

*Walter L. Dipple,* of *Dipple & Oliver,* for appellees.

OPINION BY MR. JUSTICE MAXEY, November 27, 1939:
This was an action of trespass brought by Mrs. Mary McDermott, a widow, aged sixty-six, against Julia Mar-

low and Robert Marlow, wife and husband, as the result of an automobile accident. The plaintiff was a guest passenger in a small truck used by the defendants in their poultry business. This truck, loaded with eggs, was being operated in a westerly direction toward Pittsburgh. The plaintiff describes the occurrence as follows: "A green sedan was coming the other way, opposite to us, and I looked around and saw this girl [in the green sedan] going out that way, she was away over on the other side of the road, and I said to Mrs. Marlow that girl doesn't even see us; she is on the other side all together. And just at that time Mrs. Marlow got all excited, and started to wiggle the wheel, and I said what was the matter, and she said 'Oh,' and just at that she stamped her foot and away the machine went, and the first thing I seen was the pole, and I said 'Go it easy, we are going to get it.' I said it twice, and didn't know anything more."

Mrs. Marlow testified that the truck coming in the opposite direction was on her side of the road, forcing her off the road onto the berm, and that the plaintiff then grabbed the steering wheel, reached over and tramped the gas pedal, causing the truck to run into the pole. Mrs. McDermott sustained substantial injuries and was rendered unconscious. She remained in a coma for a considerable length of time.

On behalf of the appellant it is contended that Mrs. McDermott, on account of being unconscious for so long a time, was not able to obtain the names of certain material witnesses. Dean D. Thompson of Vandergrift was following the defendants' car and he and a Miss Hughes, who was driving a car in the same direction and was abreast of the Marlow car as it was on the berm, helped to take Mrs. McDermott to the hospital. Miss Hughes, a registered nurse, living in Freidens, Pa., did not give her name at the hospital. She wrote to Mr. Thompson asking him to verify to her employers that she had assisted at this accident. Mr.

Thompson was requested by the plaintiff to give her the name and address of this nurse, in ample time before the trial, but he was unable to comply as he had lost her letter. Mr. Thompson testified for the plaintiff as follows: "I observed [just before the accident] two cars ahead of me going in the same direction. I noticed the second car ahead sort of swerving off the road to the right and strike the pole. I don't know if there was a car coming in the other direction."

A verdict was returned for the defendants. About a month after the verdict Mr. Thompson discovered the letter of Miss Hughes and forwarded it to the attorney for the plaintiff. Miss Hughes came to Pittsburgh and brought with her a Mrs. Mary Clark, who was her guest passenger at the time of the accident. The presence of Mrs. Clark was unexpected as none of the attorneys knew of her existence. The depositions of these two women were to the effect that shortly before the accident no car or truck was approaching or had passed in the opposite direction, that Mrs. McDermott at all times maintained her position on the right hand side of the Marlow car and in no way took part or interfered in its operation and that Mrs. Marlow after the accident made no complaint about being forced off the road or about Mrs. McDermott interfering with the operation of the car.

A new trial was asked for on account of the after discovery of the evidence of Miss Hughes and Mrs. Clark. A new trial was denied, judgment was entered and this appeal followed.

The chief vice of the newly discovered evidence is that the evidence conflicts not only with the testimony of Mrs. Marlow the defendant, but also with the testimony of the plaintiff herself. Counsel offered the new evidence for the purpose chiefly of showing there was *no* car coming in the opposite direction from the defendants' car and that defendants' car was not forced off the road. Appellant's paper book says: "The ab-

sence of cars coming in the opposite direction is firmly established by the depositions of Miss Hughes and Mrs. Clark." Appellant's counsel admits "that the depositions of Miss Hughes and Mrs. Clark do not agree with the testimony of the plaintiff as to how the accident happened. The only explanation to be offered by counsel for the plaintiff is that the injuries to the plaintiff were so severe, particularly to the head and brain, suffering a fractured skull and concussions, and being unconscious and in a coma for considerable length of time, that she may be excused in the minor detail which does not agree with the after discovered witnesses." The infirmity of this explanation is that what counsel calls a "minor detail," to wit: that the car was coming in an opposite direction, is what he regards as the "major detail" of the depositions which he offers in support of the motion for a new trial. Furthermore, the testimony of the plaintiff (already quoted) as to what she ejaculated just before the collision does not indicate that she was in a state of coma when she called Mrs. Marlow's attention to the on-coming girl in the green sedan.

Appellant cites in support of the motion for a new trial the case of *Candelore v. Glauser*, 291 Pa. 582, 140 A. 525, where this court granted a new trial because it appeared by incontrovertible evidence, obtained after the trial, that the verdict was rendered, or materially enhanced in the amount of damages awarded, by reason of the perjury of the litigant in whose favor it was rendered. Unfortunately for appellant, if the woman defendant's testimony as to an oncoming car is "perjury," as appellant now alleges, she (i. e. the appellant) whose testimony agreed with the defendant's as to the oncoming car, is not now in a position to make that allegation. It is certainly an anomaly for a litigant to offer in justification of his or her demand for a new trial, "after-discovered testimony" which controverts the litigant's own sworn testimony.

Appellant also offered the deposition as tending to prove the position of the plaintiff "under the dashboard on her own side of the car after the accident" and that Mrs. Marlow immediately after the accident did not complain of any interference by Mrs. McDermott with the former's driving of the car. This latter testimony is negative, as Mrs. Marlow was not obliged to complain at that time of Mrs. McDermott's alleged interference with her driving. Mrs. Clark was also asked this question: "Were you able to observe those two women in this car as you were riding abreast?" She answered: "Yes, I did see them." She was asked: "Did you see the woman on the right side lean over and take any part in the operation of the car?" She answered: "No." She was asked: "Would you have seen it?" She answered: "I certainly would have, and I did not see her touch the wheel." She was asked: "Was she [Mrs. McDermott] sitting on her own side of the seat?" She answered: "Yes." As to this "new evidence," it is noted that the questions asked of Mrs. Clark were highly leading and she was not subjected to cross-examination. It is not certain that the jury would credit her statement that while in a moving car she could see whether or not Mrs. McDermott in another moving car made any motion to interfere with the operation of that car. Furthermore, part of Mrs. Marlow's complaint against Mrs. McDermott is that she put her foot on the accelerator. Mrs. Clark could hardly have been in a position to observe *that* fact. Mrs. Marlow said that Mrs. McDermott also grabbed the steering wheel, but as only a slight motion is required for that, Mrs. Clark's testimony that she *did not see* her do it is of little probative value, even though she claims she "would have" seen it if it happened. Witnesses can easily be mistaken in their ideas as to what they could or would have seen under certain circumstances.

In order to secure a new trial on the ground of after-discovered evidence it must be shown (1) that it was

through no fault or neglect of the party making such an application that such evidence was not produced at the first trial, (2) that the evidence is admissible and material, (3) that the evidence is so convincing as to make it probable that in another trial it would bring about a different verdict. The after-discovered evidence offered does not meet this third requirement.

The judgment is affirmed.