105 So.2d 785 (1958)
J.L. ALSTON, also known as Bud Alston, Appellant,
v.
Trillie SHIVER, Appellee.
Supreme Court of Florida.
October 17, 1958.
*786 Lester Bales, Jr., Zephyrhills, and Larkin & Larkin, Dade City, for appellant.
Barnes & Wagner, Dade City, for appellee.
O'CONNELL, Justice.
Trillie Shiver, plaintiff, sued J.L. Alston, defendant, for damages arising out of personal injuries received by her in an assault and battery upon her person by the defendant. The beating is alleged to have occurred on February 24, 1955. The trial was held on October 31, 1956.
The jury returned a verdict for plaintiff in amount of $7,500 compensatory and $2,500 punitive damages. Motion for new trial was denied and judgment entered on the verdict.
At the trial in this cause plaintiff, a young woman, testified that prior to the *787 alleged beating by defendant she was able to and did, from time to time, do heavy manual labor on farms, but that since the alleged beating by defendant, although she had tried, she had been unable to work, even at "sitting down" jobs.
The following are excerpts from her testimony at the trial:
"Q. Did you attempt to seek employment after a period elapsed, did you attempt to seek employment? A. I don't get you.
"Q. Did you try to get a job? A. Yes, I got me a job in the shrimp plant in Tampa.
"Q. How long did you work there? A. Three days, and it is a sitting down job and I could not even do that.
* * * * * *
"Q. How much employment have you had since the beating? A. Three days."
And on cross examination the following occurred:
"Q. Mrs. Shiver, I believe you testified you have not been able to work but three days since this trouble? A. Yes, sir.
* * * * * *
"Q. About how much of that kind or work did you do a year prior to this accident? A. This year, I have not.
"Q. I said prior to this injury, about how much? A. I have not did any of it since the injury.
"Q. I don't believe the witness understood the question. * * *"
At another point, on direct examination, the plaintiff was asked what her present physical condition was and she gave a reply, adding
"I have not been well since it happened. I figured I would try to work but I have tried and tried and I could not work."
As one of the grounds for his motion for new trial the defendant alleged that he had discovered new and material evidence, which if it had been introduced at the trial would probably have changed the verdict. He also alleged that the failure to produce such evidence was not because of lack of diligence on his part.
To this motion the defendant attached various affidavits. Two of these were executed by the manager and "floor lady", respectively, of a fruit processing and canning plant. These affidavits stated that the plaintiff had worked at said plant during a six or seven week period extending from December 1955 into February 1956, earning $172.56, and had not displayed any disability. Affidavits of three other persons showed that plaintiff had in the summer of 1955 worked as a farmhand gathering corn and driving a truck, and had immediately preceding the trial worked some 8 or 9 days as a laborer clearing a field of stumps and roots. One affiant stated that she lifted stumps weighing as much as 100 pounds. These affiants stated they observed no disability on part of the plaintiff.
Affidavit executed by the defendant and his counsel were also filed in which, under the facts of this case, it was satisfactorily shown that the failure to produce at the trial the evidence set forth in the affidavits was not due to lack of diligence by defendant.
Plaintiff filed affidavits in opposition to those filed by defendant. However, these affidavits did not deny but rather admitted that plaintiff had worked on the occasions set forth in the affidavits filed by defendant. Plaintiff sought only to excuse her failure to testify as to this work by saying that she thought the word "employment", as used in the questions put to her at the trial, meant only full time employment and not temporary work such as she had performed.
At a hearing on the motion for new trial, testimony was taken of Mr. Fillman who had given an affidavit for each of the parties. *788 Mr. Fillman's testimony varied in some respects from his affidavits, but did not weaken defendant's position.
After hearing on the motion for new trial, the court entered a final judgment in which the motion for new trial was denied, the court saying that, insofar as that part of the motion which was based on newly discovered evidence, he felt that this case "was governed by the rule as set forth in" Townsend v. Gibson, Fla. 1953, 67 So.2d 225, and not by the case of Ogburn v. Murray, Fla. 1956, 86 So.2d 796.
We find little similarity in the case at bar and the Townsend case. In the latter case, the question of newly discovered evidence was presented by an extraordinary motion for new trial filed some three months after entry of the verdict. The trial court granted a motion to strike the extraordinary motion for new trial and assigned as basis therefor that it presented a new and different ground than those already stated in the motion for new trial. This Court said merely that the trial judge did not abuse his discretion in granting the motion to strike.
The principal question treated by this Court in the Townsend case was excessiveness of the verdict, a question unnecessary to be decided here.
However, we do feel that the principles relating to granting of a new trial for false testimony given by a party, as stated in the Ogburn case, are applicable here.
The newly discovered evidence contained in the affidavits and the testimony of Mr. Fillman strongly tend to prove that the plaintiff testified falsely at the trial.
As we view the matter, the importance of plaintiff's failure to testify regarding the work she had performed since the beating lies not in the fact that it would tend to reduce plaintiff's damages for loss of earnings to date of the trial, but rather in the fact that such evidence would have a strong bearing on the jury's determination of the extent of her injuries, if any, and her capacity to do the type work to which she was accustomed, at the time of the trial and in the future.
Further significance of the testimony which plaintiff failed to give at the trial is found in the medical testimony offered by the plaintiff. Plaintiff was examined by a physician on the Friday prior to the trial, obviously only for the purpose of obtaining his testimony at the trial. He stated that he based his testimony on the case history given him by plaintiff which was fairly consistent with her testimony at the trial, including the statement that she had worked only three days since the beating. Based on the case history given him, and certain purely subjective symptoms, the doctor "assumed" that plaintiff would have a 10 to 15 per cent disability of the body as a whole.
It now appears that from the affidavits, including that made by the plaintiff herself, that the case history on which the doctor rendered his opinion was falsified. In fact, plaintiff went from her job of clearing and lifting stumps to the physician's office to be examined, but neglected to advise him of such activity. When the facts upon which an expert opinion is based are shown to be nonexistent or not as assumed, the opinion of necessity loses its validity. Such is the case here.
It is impossible for anyone to forecast what a jury will decide in any trial, yet on the facts in this case we cannot doubt that the verdict would have been materially different if the plaintiff had testified truthfully about her work after the alleged beating and up to the trial, particularly as to her work in lifting the stumps in the week preceding the trial.
We are not impressed by plaintiff's excuse that she did not understand the meaning of the word "employment" used in the questions put to her at the trial. She contends that she understood it to mean only full time work.
The word "employment" is of such common usage and meaning that it is difficult *789 to believe plaintiff's contention. Further, her own answers indicate that she did, in fact, understand the meaning of the word.
Added to this is the fact that the record reveals that plaintiff was not one who was accustomed to working steadily or permanently for one employer, so as to make a distinction between work and employment.
She had worked for defendant for only two weeks prior to the alleged beating, and prior thereto had worked for a Mr. Thompson. When asked who she had worked for prior to working for Mr. Thompson she replied:
"Here and there at different farms where they needed me. Right through watermelon season if they needed someone to hoe watermelons. Maybe somebody here two days and somebody over there two days. Each one when they needed me would come and get me to work. Everybody in the neighborhood that needed somebody to work for them would come to me and if I was able to work I would work."
Plaintiff testified she had not filed a federal income tax return in either 1954 or 1955 which while not conclusive as to her earnings indicated that she earned less than $600 in each of said years. She testified that when working she received from 75¢ to $1.25 per hour.
We are forced to the conclusion that the plaintiff ignored her oath to tell the truth, the whole truth and nothing but the truth. In doing so she has been, to this date, successful in working a fraud both on the court and the defendant. But she cannot and will not be allowed to profit thereby.
The established general rule is that a motion for new trial based upon newly discovered evidence will not be granted unless certain requirements are met. One of these requirements is that such evidence would probably change the result of the case upon a new trial. Annotation: 10 A.L.R.2d 381 (1948). This rule has been adhered to in this jurisdiction. Howard v. State, 1895, 36 Fla. 21, 17 So. 84; Clair v. Meriwether, 1937, 127 Fla. 841, 174 So. 591; Ogburn v. Murray, Fla. 1956, 86 So.2d 796.
Objection to this rule is expressed in Rasquin v. Cohen, 1943, 92 N.H. 440, 33 A.2d 404, wherein the court stated that a rule which requires the presiding judge to forecast the workings of the minds of twelve jurymen can hardly be regarded as sensible. With this we agree.
Because of this objection to the general rule and because of the court's and the public abhorrence of false testimony, an exception to the general rule has been established. This exception is applicable in the case now before us. Under this exception the rule is relaxed where it is shown that the prevailing party knowingly gave or used false testimony. In such event a new trial on all issues is allowable at the court's discretion without it having to be first shown that the newly discovered evidence will probably produce a different result on the new trial. Rasquin v. Cohen, supra; Harris v. Wall, 1925, 144 Va. 774, 130 S.E. 899; Independent Cab Association v. La Touche, 1955, 197 Va. 367, 89 S.E.2d 320; Weinhart v. Smith, 1930, 211 Iowa 242, 233 N.W. 26; Jettre v. Healy, 1953, 245 Iowa 294, 60 N.W.2d 541; Candelore v. Glauser, 1928, 291 Pa. 582, 140 A. 525; McCabe v. Pennsylvania R. Co., 1933, 311 Pa. 229, 166 A. 843; Boxberger v. Texas Co., 1943, 156 Kan. 471, 134 P.2d 644; 66 C.J.S. New Trial § 93 (b).
Although this Court, in Ogburn v. Murray, 86 So.2d 796, supra, adhered to the general rule requiring that a showing be made that the newly discovered evidence would probably bring about a different result in the case, the Court recognized the doctrine exemplified by the above cited cases. This Court, on page 798, said:
"* * * this court has said that the rules as to newly discovered evidence *790 `are not inflexible and must sometimes bend in order to meet the ends of justice', Gaither v. Anderson, 103 Fla. 1190, 135 So. 840, 139 So. 587, 588; and we think of no more appropriate situation for `bending' the rules than the one presented here, where the only reasonable and logical inference is that Wilson [one of the plaintiffs] deliberately falsified his earnings. Other courts have so held in analogous situations. Cf. Candelore v. Glauser, 291 Pa. 582, 140 A. 525; Harris v. Wall, 144 Va. 774, 130 S.E. 899."
The exception to the general rule is not in conflict with the decision of this Court in Vining v. American Bakeries Co., 1935, 121 Fla. 116, 163 So. 396, rehearing denied 121 Fla. 122, 163 So. 519, because of the factual and procedural circumstances in the Vining case and for the reasons explained in that opinion at page 398 of 163 So.
We therefore adopt the above mentioned exception to the general rule and by applying it to this cause reach the conclusion that because of plaintiff's false testimony given at the trial on material issues therein the trial court should have ordered a new trial on the issue of liability as well as of damages.
Defendant urges three other grounds for reversal. Because of what we have said above, it is unnecessary for us to consider the remaining questions in deciding this case. However, since this cause must be retried, it may be helpful to the trial court if we discuss two of them briefly.
During the trial of this cause there were introduced into evidence the transcript of testimony of defendant and another witness, given in County Court at a criminal proceeding arising out of the same incident as here involved. Portions of the testimony were read to the jury. The purpose of the introduction of this transcript was an attempt by the plaintiff to discredit or impeach the defendant's and the witness' testimony by showing inconsistent statements as to the same fact.
At the close of the trial, the trial judge gave a general charge regarding testimony of prior inconsistent statements and impeaching testimony. The court followed this charge by a special charge in which the defendant and the other witness were singled out by name and in which, in effect, the court invited the especial attention of the jury to possible inconsistent statements of the defendant and the witness.
Defendant contends that it was error to single out these two witnesses calling the question of their credibility to the special attention of the jury.
We think it sufficient to invite the attention of the trial court to the case of Hall v. State, 1919, 78 Fla. 420, 83 So. 513, 8 A.L.R. 1034, in which we held it improper to segregate any witness for comment, or call special attention to him or his testimony.
The defendant complains also that the trial court erred in allowing to be introduced into evidence, over defendant's objection that the handle had no connection with the case, a new axe handle, offered as a "replica" of the stick used by defendant in beating plaintiff.
The plaintiff argues that the new axe handle was properly admitted as demonstrative evidence.
The axe handle was offered in evidence during the testimony of Mrs. Bohannon, a witness for plaintiff. When asked whether the axe handle used by defendant was similar to the new one, she replied that it was, except that "it was cracked a little on the corner and shorter." On this identification the new axe handle was admitted in evidence, not as the instrument used in the beating, but as a "replica" thereof. Plaintiff's counsel did not offer any other reason for placing the object in evidence.
*791 Demonstrative evidence is admissible only when it is relevant to the issues in the case. Such evidence is generally more effective than a description given by a witness, for it enables the jury, or the court, to see and thereby better understand the question or issue involved. For this reason it is essential, in every case where demonstrative evidence is offered, that the object or thing offered for the jury to see be first shown to be the object in issue and that it is in substantially the same condition as at the pertinent time, or that it is such a reasonably exact reproduction or replica of the object involved that when viewed by the jury it causes them to see substantially the same object as the original.
The person offering such evidence should be required to give a good reason for its acceptance into evidence, and this is particularly true if the object be not the original, but only a replica or a facsimile.
By the statement of the witness who identified the axe handle, the "replica" offered and received in evidence here was longer than the one allegedly used in the beating. The evidence shows the new handle to have been three feet long and the stick used in the beating to have been about two feet long. It should not have been admitted for this reason.
Further, plaintiff gave no reason for asking that the new axe handle be offered in evidence and we see none, unless it was to incite the anger of the jury.
Reversed and remanded for new trial.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.