204 So.2d 235 (1967)
Michael Wilbur WADE, Appellant,
v.
STATE of Florida, Appellee.
No. 67-40.
District Court of Appeal of Florida. Second District.
November 1, 1967.
Rehearing Denied December 8, 1967.
*236 Joe H. Mount, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
LILES, Chief Judge.
Appellant, Michael Wade, appeals from his conviction of first degree murder and raises five points for this court's consideration.
First, the appellant claims that the confession introduced into evidence against him was not freely and voluntarily given and that the trial court erred by admitting it. Appellant relies upon Williams v. State, Fla.App. 1966, 188 So.2d 320, 327 which says:
"In order for a confession to be admissible to go before the jury, it must have been freely and voluntarily made, and not influenced directly or indirectly by any threat, promise, fear, hope, coercion, extortion, or other illegal inducement. Other anesthetizing influences which might under certain circumstances condemn a confession, in what has been characterized as a `totality of circumstances', are: systematic, persistent, prolonged interrogation; unlawful detention; failure to inform the accused of his right to decline to make a statement, and other organic rights; mental incapacity; degenerate character; ignorance and age, either youth or senility. * * *"
Appellant, who had a history of mental illness, contends that he was lead to believe that by confessing to the crime he would be returned to the state mental hospital for treatment. The appellant further contends that there was no "airing out" of all the facts and circumstances surrounding the giving of the statement and that the state did not meet its burden of proving that the confession was voluntary.
Admittedly, the trial record discloses that no separate hearing was held out of the presence of the jury to determine the voluntariness of appellant's confession. However, the record does reveal the following testimony given by a police captain during the laying of the predicate for the introduction of the confession:
Prosecutor:
"Q All right, sir. I'm going to ask you a few questions in connection with this statement. During the time of writing out this statement, did Michael Wade indicate that he did not want to write this statement?
A No, sir.

*237 Q Was Mr. Parham present at all times when he was writing this statement?
A Yes, sir.
Q Captain Heinrich, did you make any promises to Michael Wade in consideration for writing out this statement?
A No, sir, I did not. In fact, I made it a point to tell him that there was no promises, nothing that we could do, when we advised him of his Constitutional Rights.
Q Did either yourself or any other member of the Tampa Police Department lay any hands upon Michael Wade prior to writing this statement?
A No, sir.
Q Was any form of force or duress used upon Michael Wade prior to him writing this statement?
A No, sir.
Q Was he verbally advised that he had a right not to say anything concerning this case?
A Yes, sir, he was.
Q Had he already been arrested, sir?
A Yes, sir, he was.
Q Was he told what he was being arrested for?
A Yes, sir, I told him."
Cross-examination by Defense Attorney:
"Q Captain Heinrich, you stated that you and I both told Mike that he didn't have to make any statements before he wrote this out, isn't this correct?
A Well, you  Detective Bardin advised him and yourself. Detective Bardin, as he read the preliminary portion of the statement to him, read that verbatem (sic), and also indicated what it meant, and basically gave him the same advice or same information you did.
Q And when Mike was seeking my advice I told him in your presence, with your assistance that the evidence was coming in that this girl was in the automobile, isn't this true?
A Yes, sir.
Q This happened, didn't it?
A Yes, sir.
Q We sat there and talked, did we not, about Mike's mental condition before he made this statement?
A Well, this is before he indicated that he was going to write  I believe this is when you and I were in the room with him?
Q Yes, talking to him and didn't you say as well as I, `Mike, we know you are sick, and you need help. Nobody wants to hurt you.'
A Well, I indicated to him 
Q Was this true or not, Captain?
A Not in that very sense there. I'd like to explain that. I believe you made that statement and I believe I concurred with you on that.
Q You let Mike know that this was your feelings also, didn't you?
A I think I indicated that he was possibly sick.
"* * *
"Q Well, then, it was said to him prior to making this statement, `We want to see you get help,' isn't that true?
A I think we even said, `We think you need help.'

*238 Q `And we want to see you get it, and we want to help you,' wasn't that said?
A No. you recall. You were there, Mr. Parham.
Q I am asking you, Captain Heinrich.
A I am replying to your question. As you well know, we did not promise. We did not use any force, duress, whatsoever in getting this statement. In fact, Mr. Parham, after the statement was taken or after the statement was written you read the statement and then Mr. Bardin read the statement out loud to Mike, and Mike indicated that this was true, what he said.
Q And this was after you had indicated and I had indicated that he needed help and he'd be in the hospital, wasn't it?
A Well, I concurred that he did need help, yes, sir.
"* * *
"Q You did you ask Mrs. Wade to have him taken to Tampa General Hospital for a psychiatric examination, did you not?
A No, sir.
Q You did not make this request?
A In fact, I did not talk to Mrs. Wade or meet Mrs. Wade until the day that the Grand Jury met.
"* * *
"Q All right. Did you ask me to do it?
A I said, if you recall, Mr. Parham, that he was taken to Tampa General by my officers as a result of a petition that was taken by Mrs. Wade or signed by Mrs. Wade in the County Court. I did not say that I had communicated with her regarding this matter."
Certainly, the better procedure is to determine the voluntariness of the confession out of the presence of the jury. But where the defense counsel makes no request that the jury be excused and the confession is found to have been freely given, failure to conduct the investigation of its voluntariness out of the presence of the jury is not reversible error. Brown v. State, Fla.App. 1966, 181 So.2d 578; Gregory v. State, Fla.App. 1966, 181 So.2d 547.
The above quoted excerpts from the record plus the remaining text reveals that there was a disclosure of the circumstances surrounding the giving of the confession. Furthermore, the record demonstrates that the state did make a prima facie showing that the confession was voluntarily given.
It is true that the record shows conflict between the police captain and the defense attorney as to statements made to appellant concerning his need for "help." However, the most that can be inferred from the captain's testimony is that the statement was made, "We think you need help." In definite statements such as those admitted to by the police captain are not of the type or nature as to constitute a prohibited "promise." Thus, statements of this tenor cannot be said to make a subsequent confession involuntary. Also, it must be noted that appellant's counsel was present and advised him both prior to and during the giving of the confession. We find that the trial court was correct in ruling that the confession was freely given and in allowing its introduction into evidence.
Appellant assigns as error the admission of a master brake cylinder into evidence. This master cylinder was not claimed to be the same one used in perpetration of the crime but was similar[1] to *239 the one allegedly used. We cannot agree that the trial court erred by admitting this as demonstrative evidence. The Florida Supreme Court in Alston v. Shiver, Fla. 1958, 105 So.2d 785, held that demonstrative evidence is admissible when it is relevant to the issues in the case and when it is a reasonably exact replica of the object involved. See Robinson v. State, Fla.App. 1962, 145 So.2d 561.
The appellant claims his rights to a public trial were violated by the trial court's exclusion of the general public from the court room during selection of the jury. From the record it appears that the press was allowed to remain. It also appears that a large crowd was present and that spectators were mingling with the prospective jurors. The trial judge stated that in order to keep the jury together and to keep them in such a location that they would be readily available he excluded the spectators. Surely in a situation such as this the court must be allowed to take reasonable measures to maintain the orderliness and integrity of the judicial process. Appellant also complains that he was denied the right to have his mother present during the trial. Appellant's mother was sequestered by the state as a witness. Appellant's counsel invoked the rule thereby causing all witnesses to be excluded from the court room. Appellant's counsel made no request of the judge that appellant's mother be exempted from the rule and admitted into the court room. Thus, it was appellant's own actions that caused his mother to be excluded and appellant should not now be heard to complain of a situation which he created.
The last points assigned for our consideration have to do with certain statements made by the prosecutor together with the trial court's failure to grant a directed verdict in favor of the defendant. We have examined the statements complained of and do not agree that they were either inflammatory or prejudicial. The fact that the trial court refused to grant a directed verdict clearly was not error.
In conclusion, we believe the verdict of the jury should be affirmed for the reason that the confession of the defendant was freely and voluntarily given. It was not tainted with that degree of involuntariness that would prohibit its introduction as evidence. It would appear from the record that any promise made was offered by defendant's counsel and the mere fact that the promise was made in the presence of the police does not, in our opinion, come within the purview of the well established principle that confessions must be voluntarily given.
Defendant having failed to demonstrate reversible error, the judgment is affirmed.
PIERCE and HOBSON, JJ., concur.
NOTES
[1] The master cylinders were identical except that the alleged murder weapon contained a brake switch and the cylinder introduced into evidence did not.