## McCabe *v*. Pennsylvania Railroad Company, Appellant.

Argued January 18, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Raymond E. Brown,* with him *Matthew A. Crawford,*
for appellant.

*Charles J. Margiotti,* with him *Edward Friedman,* for
appellee.

OPINION BY MR. JUSTICE DREW, March 20, 1933:

Plaintiff brought this action in trespass to recover damages for injuries which, he alleged, he sustained as a result of swallowing glass contained in a jelly omelet served to him on a dining car of defendant company. At the trial, a verdict was returned for plaintiff in the sum of $15,000. Defendant moved for judgment n. o. v., and later, on the ground of after-discovered evidence, petitioned the court for leave to move for a new trial nunc pro tunc. After a hearing and argument, the learned court below denied defendant's petition, overruled its motion for judgment n. o. v., and entered judgment for plaintiff on the verdict. From the judgment so entered, defendant appealed.

In support of its motion for judgment n. o. v., defendant contends that plaintiff's testimony that he found glass in the food served to him was the only evidence in the case which tended to show negligence, that it raised no presumption of negligence on the part of defendant, and that it was not sufficient to warrant even an inference of negligence. This contention is not supported by the facts. Not only did plaintiff testify that he found a piece of glass in his mouth when eating the omelet, but defendant's witnesses, the steward of the dining car and two of the cooks, testified that the glass container out of which the jelly was taken had been opened just before the preparation of the food, and that when the steward went to the kitchen immediately after plaintiff discovered the presence of glass in his mouth they looked at the container and observed a broken place at the top, with several cracks about two and a half inches long radiating from it. Each cook stated that he had handled the container in preparing the omelet but had not noticed any defect in it. From this testimony, the jury might well have inferred that if reasonable care had been taken in opening the container, and in observing it before using the jelly, the presence of the piece of broken glass would have been revealed, and that failure to dis-

cover it constituted negligence. At the trial plaintiff did not attempt to rely upon the doctrine of res ipsa loquitur or upon a presumption of negligence, based upon the mere fact that glass was found in the food served him. The question presented to the jury was whether under all the evidence defendant's servants were negligent. This is shown by the following excerpt from the charge: "The mere presence of glass in the omelet served to the plaintiff raises no presumption of negligence. The plaintiff must go further and show how it got there and that its presence in the food was due to some negligent act on the part of a servant or servants of the defendant." In rendering their verdict for plaintiff after being so instructed, the jury must be considered as having found, from all the testimony, that proper care was not used in the opening of the jelly glass and the preparation of the omelet. We cannot say that the evidence was insufficient to support this conclusion. Hence defendant's motion for judgment n. o. v. was properly overruled.

However, the judgment must be reversed upon another ground. Shortly after the trial, and before judgment was entered, defendant discovered that plaintiff had made application for life insurance in another county of the State eight days prior to the trial and had been examined by a physician upon that application. In the course of this examination plaintiff stated to the physician that he was in good health and that he had not been examined or treated by any physician during the preceding five years, and signed a statement warranting this to be true. After discovering these facts, defendant petitioned the court for leave to move for a new trial nunc pro tunc. At the hearing upon the petition, plaintiff admitted that he had made the statements attributed to him by the physician and contained in his application for insurance—this despite the fact that he had testified at the trial that he was suffering from an ulcer of the stomach and other ailments, that he had been examined

by a number of physicians, and that he had been under constant medical care, at a total cost of almost $2,500, for the three years between the occurrence on the dining car and the trial. In the face of this admission of brazen wrongdoing by plaintiff, the trial court refused to grant a new trial. This was an abuse of discretion. It is true beyond doubt or question that plaintiff perpetrated a bold fraud upon the court and jury or upon the insurance company. It is equally true that if defendant had been in possession of this evidence at the trial, it would have been able to contradict plaintiff on matters most material to his case, with the result that the jury would have been justified in disregarding his whole testimony. "Falsus in uno, falsus in omnibus." The statements which he warranted as true in his application were wholly false, or he perjured himself deliberately and for profit at the trial. To deny defendant the right to a new trial under these circumstances would be a travesty upon justice. We realize it is unusual to grant a new trial on the ground of after-discovered evidence impeaching the testimony of a witness, but where, as here, that witness is the plaintiff himself, the testimony contradicted is the very basis of his case, and he admits having made the statements that contradict his testimony at the trial, a new trial should be granted so that a jury may pass upon plaintiff's credibility in the light of this evidence.

Judgment reversed and a new trial awarded.