501 A.2d 1380

COMMONWEALTH of Pennsylvania, ex rel. Anne M. MEYERS, Appellee,

v.

Michael J. STERN, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 23, 1985.

Decided Dec. 10, 1985.

Daniel S. Bernheim, Philadelphia, for appellant.

William Lamb, Nancy C.M. Balliet, West Chester, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This appeal is from an order of the Superior Court, 328 Pa.Super. 557, 476 A.2d 65, affirming the order of the Court of Common Pleas of Chester County which granted appellee a new trial in a suit to establish the paternity of appellant.

Appellee initiated this action on January 3, 1979, in which she alleged the paternity of appellant with respect to her

child.  A trial was initially held without appellant due to lack of notice.  Appellant's absence warranted the granting of a new trial which was held on November 26–28, 1979, in which a verdict on behalf of appellant was returned.  Appellee filed a motion for a new trial on December 4, 1979.  An amended motion for new trial was filed on January 5, 1981, alleging, *inter alia,* the acquisition of new evidence in the form of testimony as to a telephone conversation between appellant and appellee on March 8, 1980, in which appellant allegedly admitted to perjuring himself at trial.  It was further alleged that appellant admitted to being the father of the child in question.

A hearing was held on July 14, 1981, with respect to appellee's motion and a new trial was granted on July 6, 1982.  Appellant subsequently appealed the new trial order and the Superior Court affirmed on May 4, 1984.

A short history of the controversy at bar will provide insight to the immediate issue of the after-discovered evidence.  Appellant and appellee began to see one another regularly during the summer of 1977.  At the time, appellant was a resident of Pennsylvania and appellee a resident of New York.  Appellee testified that her first moment of intimacy with appellant occurred in Pennsylvania at the end of July, 1977.  She further testified that the act leading to the pregnancy at issue transpired between her and appellant in November of 1977, at the home of her friend, Mark Ginsberg.  Appellee claims she had no sexual relations with anyone from June of 1976 to July of 1977, and from then on only with appellant until December of 1977.  Appellant denied having had sexual relations with appellee during the established period of conception.  These allegations and denials were the extent of the evidence presented to the jury, upon which the jury returned a verdict for appellant.

As previously stated, appellee was granted a new trial on account of after-discovered evidence.  Appellee and Mr. Ginsberg testified at an evidentiary hearing to a telephone conversation on March 8, 1980, between appellee and appel-

lant.[1] Appellee testified that the gravamen of her conversation with appellant went as follows:

He accepted my apology and said that he also was sorry but that he had no choice. Sure, he had lied in court—he had lied in court when he said he hadn't slept with me in November, but he had heard my testimony and he knew he had to cover all of his bases.

He went on to tell me that it didn't matter anyway because he knew he was the father, I knew he was the father, and the jury had known it, too. All they were saying to me was that I should have had an abortion, and all he was trying to explain to me was that a child is not your child because you contribute an egg or a sperm to its development, but a child is a child of parents who are willing to assume responsibilities for the child, and because I was the only one willing to assume any responsibility for her, that I was both the father and mother, and that if I was interested in completing her birth certificate, I should sign it as her father.[2]

The trial court found that the preceding testimony coupled with the corroborative statement of Mr. Ginsberg provided a sufficient basis for the grant of a new trial.[3] The Superior Court found that the trial court had not abused its discretion in granting the motion, and thus, affirmed. We disagree with the Superior Court's disposition of this case and therefore reverse.

■■■■ Our scope of review of the lower court's grant of a new trial on the basis of after-discovered evidence is wheth-

1. Mr. Ginsberg was able to listen in on the conversation through the use of a listening device attached to appellee's telephone.

2. Appellant does not deny that a telephone conversation took place between appellee and himself on March 8, 1980, though he completely refutes any claim of perjury or alleged admissions.

3. Matty Jane Sobel, appellant's ex-wife, also testified at the evidentiary hearing. She stated appellant revealed to her, in November of 1979, that he was the father of the child at issue. She explained the reason she did not divulge this information to appellee until March of 1981, was for fear of jeopardizing a joint-custody agreement between appellant, the ex-wife and a child of their own. Since the trial court did not rely on this testimony in granting a new trial, it is not necessary for this Court to further analyze its merit.

er the court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Commonwealth v. Cooney*, 444 Pa. 416, 419, 282 A.2d 29, 30 (1971). In conducting this review there is a "presumption that the trial court was justified in granting a new trial even when the reason given therefore is an insufficient reason unless the court expressly states that it is the only reason." *Bellettiere v. Philadelphia*, 367 Pa. 638, 642, 81 A.2d 857, 859 (1951).

In the case at bar the trial court limited its basis for granting a new trial to the after-discovered evidence previously discussed.

> ... we find that in the interests of justice a new trial should be granted since the proffered testimony meets the requirements of after discovered evidence and since the alleged perjury relates to a material aspect of the case.

Slip op. Chester County No. 21N 1979 at 5. The preceding statement allows this Court, without trespassing on the trial judge's duty to determine facts, to focus its review upon the specific character of the after-discovered evidence. The issue thus becomes whether the after-discovered evidence, in the form of the telephone conversation between appellant and appellee, warranted the granting of a new trial.[4]

The law regarding the granting of a new trial based on after-discovered evidence has been firmly established:

> In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credi-

---

4. Appellant also raises the issue of whether the trial court abused its discretion by denying his motion for a continuance at the evidentiary hearing, forcing him to proceed *pro se*. Due to our disposition of the first issue in favor of appellant it will be unnecessary for us to consider the merits of this claim.

bility, and must be such as would likely compel a different result. (Citations omitted.)

*In Re Estate of Townsend,* 436 Pa. 185, 190, 258 A.2d 518, 520 (1969). *See also, Commonwealth v. Scott,* 503 Pa. 624, 628, 470 A.2d 91, 93 (1983).

■ An analysis of the evidence presented by appellee at the evidentiary hearing reveals its only inherent quality is for impeachment purposes. The jury in the original trial based its verdict on the testimony of appellee and appellant. The evidence presented by appellee after trial consists of an alleged recantation by the defense's only witness, the defendant (appellant) himself.

We have frequently held that after-discovered evidence offered only to impeach the credibility of witnesses who testified at the trial, does not constitute a sufficient ground for granting a new trial. (Citations omitted.)

*Rice v. Bauer,* 359 Pa. 544, 549, 59 A.2d 885, 887 (1948).

Appellee and the courts below place great emphasis on the case of *McCabe v. Pennsylvania Railroad Co.,* 311 Pa. 229, 166 A. 843 (1933), in which the plaintiff sued under the theory of negligence for the ingestion of glass found in the defendant's food. The plaintiff in that case testified as to ulcers supposedly caused by the glass. The jury rendered a verdict in his favor. Subsequent to trial, the defendant discovered evidence showing that the plaintiff told an insurance company physician eight (8) days prior to trial that he was in good health. The plaintiff had signed a statement warranting this admission. The Court found this evidence compelled the granting of a new trial.

The case at bar is obviously distinguishable. In *McCabe,* the perjury was admitted by the party. Here appellant completely denies that he ever made any statement perjuring himself after the trial. We have previously held that:

... where the witness accused of perjury denies his guilt, so that it is doubtful whether he did give false testimony, the request for a new trial is properly refused. (Citations omitted.)

*Kvaternik v. Yochim,* 360 Pa. 387, 389, 61 A.2d 815, 816 (1948).

■ The learned trial judge accepted appellee's allegations as sufficient grounds upon which to grant a new trial. We are not trespassing upon his duties by our determination that such allegations as a matter of law are insufficient. Nor do we interfere with his prerogatives to determine facts, nor indeed here, with his interpretation of what the law appeared. What we are saying is that the factual matrix offered as grounds for a new trial, as a matter of law, upon the facts as alleged, were insufficient of themselves, to support a new trial. While we are aware that a similar matrix was apparently approved in *Kuzma v. Kuzma,* 191 Pa.Super. 295, 156 A.2d 884 (1959), we cannot agree that such an allegation of perjury, based on an alleged testimonial recantation of a party, however accepted or possible, or however corroborated by other testimonial evidence, is sufficient for a new trial to retest the testimonial credibilities of the parties. Under the facts before us we need not determine what other proofs, short of a conviction or a confession of perjury, would justify the grant. Doubtless, there are other physical facts that so transcend mere testimonial contradiction, that their acceptance would lend such corroboration as to justify an exercise of sound discretion in granting a new trial. Such, however, are not before us here.

In summary, the evidence presented here was for impeachment purposes only. It contained an obvious element of uncertainty, lacking the "compelling nature" necessary to warrant a jury's re-evaluation. Mere testimonial evidence, purporting to discredit the trial testimony of the prevailing party, is not sufficient to warrant a new trial. To hold otherwise, would encourage losing parties to continually beseige trial courts with claims that the prevailing party lied, thereby requiring the second guessing of the fact finder's initial determination of credibility.

The order granting a new trial is therefore reversed.