605 A.2d 373

Rocco PIROZZI and Anna Marie Pirozzi, Appellants,

v.

PENSKE OLDS–CADILLAC–GMC, INC., Patriot Oldsmobile–
GMC, Inc. and Cowan Olds–Cadillac–GMC, Inc.

Superior Court of Pennsylvania.

Argued Jan. 9, 1992.

Filed March 19, 1992.

Michael G. Louis, West Chester, for appellants.

William R. Hagner, Paoli, for appellees.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of the Court of Common Pleas of Chester County in favor of the defendants/appellees. We reverse.

Appellant Rocco Pirozzi ("Pirozzi") purchased a 1986 Cadillac Eldorado coupe from appellees Penske Olds–Cadillac–GMC, Inc., Patriot–Oldsmobile–GMC, Inc., and Cowan Olds–Cadillac–GMC, Inc. ("Penske") in 1986.[1] The automobile was held out as "new" by Penske; however, unknown to Pirozzi, a surface crease or gouge on the front edge of the left door had been repaired and repainted by Penske before the car was offered for sale. The crease was approximately three inches long and one-half an inch wide.

Penske's service manager became aware of the crease upon delivery of the automobile and sent the car to an auto body shop in order to have the crease removed. The auto

---

1. The three names of the appellee reflect a name change only, not a change of the corporation. The three names refer to the same entity, Cowan Olds–Cadillac–GMC, Inc.

body shop repaired the crease and repainted the door of the automobile.[2]  The dealership subsequently sold the automobile to Pirozzi without informing him that the car had been damaged, repaired, and repainted.[3]

Pirozzi purchased the 1986 Cadillac Eldorado with a $7,100.00 down payment after executing an installment sales contract on October 8, 1986.  The list price of the car was $29,665.00, but Pirozzi purchased it for $23,673.87. Jack Nercesian, owner of J & B Cadillac, testified that the $7,000.00 reduction from the list price was not due to the crease: "Seven thousand dollars was not off for the dink. You could have walked in and bought that car for maybe twenty-four, twenty-five [thousand] with no problem.  Nobody sells a car for list, you know.  I never had that experience."  On October 11, 1986 Pirozzi took possession of the car at Penske.  On October 13, 1986, while the Cadillac was parked in front of Pirozzi's residence, Nercesian first observed the car from his showroom which is next door to Pirozzi's residence.  Nercesian told Pirozzi that it appeared as if the left door of the car had been repainted.[4] To Nercesian and the other salesman in his showroom the paint on the left door was noticeably different from the rest of the car.  Stunned by this discovery, Pirozzi took the car to a local auto body shop for a second, professional opinion. The owner of the body shop confirmed that the door had, indeed, been repainted.

2.  The cost of repairing and repainting the car, as charged by the auto body shop, was $108.00.

3.  Hugh B. Cowan, president of Cowan Olds–Cadillac–GMC, Inc. (Penske), testified that it is the policy of the dealership *not* to reveal to the consumer automobile damage sustained prior to its arrival at the dealership unless the customer specifically asks about such damage. Instead, the damage is merely noted on a carrier receipt, and the automobiles are repaired and placed on the display floor.

4.  Nercesian and Pirozzi had discussed the prices of the Eldorado prior to Pirozzi's purchase of the car.  Pirozzi told Nercesian that he could get the same car for a lower price with more options at another dealership.  Nercesian could not match the price.  When Pirozzi again spoke with Bob DeCampli, a salesman at the Penske dealership, he asked him several times if there was anything wrong with the car. DeCampli told him that there was nothing wrong with the car.

Pirozzi immediately drove the Cadillac back to Penske, told them about the repainted door, and demanded a full refund. Penske refused to refund Pirozzi's money, and Pirozzi left the car and the keys on the dealership lot. No one at Penske explained to Pirozzi at that time that the Cadillac had received a dent during transit from the manufacturer to the dealership and that the car had been repaired and repainted. Penske returned the car to the auto body shop where the door had originally been repaired and repainted. Here, the door[5] was repainted a second time without consulting Pirozzi and the car was, subsequently, returned to him. However, Pirozzi refused to accept the car. The Cadillac remained on the dealer's lot for nearly one year, until it was finally repossessed by the lienholder, General Motors Acceptance Corporation (GMAC).[6] GMAC subsequently sold the car at auction for less than the balance due on the loan. GMAC obtained a deficiency judgment against Pirozzi in the amount of $4,051.32. This amount remains outstanding.[7]

Pirozzi filed a complaint against Penske, alleging the dealership violated the Unfair Trade Practices and Consumer Protection Law,[8] and committed breach of warranty, fraud, and intentional misrepresentation. At a bench trial the trial court found in favor of Penske. After his post-trial motions were denied, Pirozzi filed this timely appeal.

Pirozzi presents several issues for our consideration:
(1) Did the trial court err in finding that the vehicle in question, when delivered to buyer, was "new" and was not "deteriorated, altered, reconditioned, reclaimed, used

---

**5.** It is unclear from the record whether the entire car was painted or whether just the door was repainted.

**6.** After Pirozzi refused to accept the Cadillac he contacted his attorney who sent letters to Penske demanding a full refund or a new car. When Penske refused to comply, Pirozzi filed this suit.

**7.** Pirozzi's credit rating has been adversely affected. He has been unsuccessful in his attempts to secure a loan in order to start a new business. Three banks have denied him loans due to the car repossession by GMAC.

**8.** 73 Pa.S.A. §§ 201-1 *et seq.*

or second-hand," within the meaning of the Unfair Trade Practices and Consumer Protection Law?

(2) Did the trial court err in failing to address the other alleged unfair methods of competition set forth in paragraphs 28(b) through (f) of buyer's amended complaint?

(3) Did the trial court err in failing to address the claims of breach of an express warranty set forth in counts IV, V, and VI of buyer's amended complaint?

(4) Was the trial court's verdict manifestly against the weight of the evidence such that a new trial should be granted?

(5) Based on the evidence of record, did the trial court err in failing to direct entry of judgment in favor of buyer and against seller on any or all of the claims brought?

Our standard of review of an order denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schlowmann–Siemag Aktiengesellschaft, et al.*, 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). To make that determination we must consider all the evidence received, whether the trial court ruled correctly on its admissibility or not. *Lira v. Albert Einstein Medical Center*, 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989). We must also afford the verdict winner the benefit of every inference which may reasonably be drawn from the evidence, while rejecting all unfavorable testimony and inferences. *Ingrassia Construction Company, Inc. v. Walsh*, 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984). Judgment notwithstanding the verdict may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989).

The standard of review for an order denying a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 425, 521 A.2d 413, 420–421 (1987). If support for the trial court's decision is found in

the record, the order must be affirmed. *Commonwealth ex rel. Meyers v. Stern,* 509 Pa. 260, 264, 501 A.2d 1380, 1382 (1985).

■ Pirozzi initially contends that Penske violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") when it sold him the Cadillac under the guise of being "new." The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices and the statute is the principal means for doing so in the Commonwealth. *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 460, 329 A.2d 812, 817 (1974). To this end, Section 2 of the UTPCPL lists sixteen specific, prohibited activities which are defined as unfair methods of competition or deceptive acts or practices. *See* 73 Pa.S.A. § 201–2.

In *Monumental Properties, Inc.* our supreme court held that the UTPCPL is to be liberally construed in order to effect its purpose. *Id.,* 459 Pa. at 459–460, 329 A.2d at 816–817. The supreme court went on to hold that Pennsylvania courts may turn to decisions under the Federal Trade Commission Act (FTCA)[9] for aid in interpreting the UTPCPL, as our UTPCPL has been modeled after the FTCA. *Id.* at 462, 329 A.2d at 817. It is important to note that section 3 of the UTPCPL and section 5 of the FTCA are virtually identical.[10]

The United States Supreme Court has held that under the provisions of the FTCA regarding unfair and deceptive trade practices, 15 U.S.C.A. § 45, *any conduct* determined to be *contrary to the purposes* of the FTCA *is prohibited.*

9. 15 U.S.C.A. § 41 *et seq.*

10. Section 5 of the FTCA provides in pertinent part:
Unfair methods of competition in commerce, and unfair or deceptive acts or practice in commerce, are declared unlawful.
15 U.S.C.A. § 45(a)(1) (1973).
Section 3 of the UTPCPL provides in pertinent part:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ... are hereby declared unlawful.
73 Pa.S.A. § 201–3 (1991).

*Atlantic Refining Co. v. FTC,* 381 U.S. 357, 369, 85 S.Ct. 1498, 1506, 14 L.Ed.2d 443 (1965) *reh. denied* 382 U.S. 873, 86 S.Ct. 18, 15 L.Ed.2d 114 (1965) (emphasis added). Under section 5 of the FTCA a violation occurs if conduct runs counter to the "public policy declared in Act." *Id.* The purpose of the FTCA, like the UTPCPL, is to prevent unfair or deceptive business practices and fraud.

■ Pirozzi alleges that the Cadillac he purchased was not "new," but was, in reality, "deteriorated, altered, reconditioned, reclaimed, used or second-hand" pursuant to section 2(4)(vi) of the UTPCPL. The conduct complained of by Pirozzi is that, unbeknownst to him, the "new" car had been damaged, repaired, and repainted prior to its sale and the dealership willfully failed to disclose this information to him, thereby significantly reducing its resale value. Section 201–2(4)(vi) of the UTPCPL provides: "representing that goods are original or new if they are deteriorated, *altered, reconditioned,* reclaimed, used or second-hand, is an unfair or deceptive act or practice." (emphasis added). The terms "altered" and "reconditioned" are not defined by the UTPCPL. As the words are employed in common usage and they are not defined by the statute, we must look to their common usage meaning. 1 Pa.C.S. § 1903(a); *Township of Derry, Dauphin County v. Swartz,* 21 Pa.Commw. 587, 589–90, 346 A.2d 853, 855 (1975). In Title 37 of the Pennsylvania Code, entitled "Automotive Industry Trade Practice," the term "reconditioned" is defined as *"repaired or restored to working order."* 37 Pa.Code § 301.1. (emphasis added). The term "altered" is defined by *Webster's Ninth New Collegiate Dictionary* (1987) as "to make different without changing into something else."

Applying the definitions to the facts at hand, we conclude that the car sold to Pirozzi was not "new" as represented by Penske. Instead, it was "reconditioned" in that it was repaired and restored to working order prior to its sale and "altered" in that the left front side of the car was different than the rest of the car when delivered to Pirozzi. Even after the car was repainted a second time it was still

different, for it had been repaired and repainted twice. Therefore, Penske's representation that the car was "new" when it had been damaged and subsequently repaired was a violation of the UTPCPL.

■ The sale of the car without full disclosure was deliberate. Penske admitted it has a policy of not revealing damage sustained prior to the automobile's arrival at the dealership unless the customer specifically inquires about such damage. *See* footnote 3, *supra.* The record reveals that Pirozzi asked Penske several times if there was anything wrong with the car. Penske told him that there was nothing wrong with the car. *See* footnote 4, *supra.* We believe Pirozzi's queries should have elicited the disclosure of the repaired and repainted door. It is unrealistic to expect the average consumer to specifically ask if the car was damaged in transit. Section 2(4)(xvii) of the UTPCPL states that "engaging in any other fraudulent conduct which creates a *likelihood of confusion or misunderstanding*" constitutes an unfair method of competition or an unfair or deceptive act or practice and, as such, is prohibited. (emphasis added). As evidenced by the facts, Penske's failure to reveal the damage to the car and its subsequent repair certainly created confusion and misunderstanding for the consumer in this case and, therefore, constituted a violation of section 2(4)(xvii) of the UTPCPL.

We conclude by examining the Legislature's intent when enacting this statute:

> The Legislature sought by the Consumer Protection Law [UTPCPL] to benefit the public at large by eradicating, among other things, "unfair or deceptive" business practices.... this Law attempts to place on more equal terms seller and consumer. These remedial statutes are all predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace.

*Monumental Properties, Inc.,* 459 Pa. at 457–458, 329 A.2d at 815–816.

There is not sufficient competent evidence to sustain the verdict. After reviewing all the evidence in the light most favorable to Penske, the verdict winner, we find that the trial court erred in finding that Pirozzi's car was "new" within the meaning of the UTPCPL. We, therefore, reverse the judgment and remand for entry of judgment non obstante veredicto.

Reversed and remanded for entry of judgment non obstante veredicto. Jurisdiction relinquished.