**Carol BERGER, Appellant,**

v.

**William SCHETMAN, M.D., William Schetman, M.D., P.C., Appellee.**

Superior Court of Pennsylvania.

Argued May 24, 2005.

Filed Sept. 6, 2005.

Paul A. Lauricella, Philadelphia, for appellant.

Gregory S. Nesbitt, Plymouth Rock, for appellee.

BEFORE: DEL SOLE, P.J., BENDER and OLSZEWSKI, JJ.

OPINION BY BENDER, J.:

¶ 1 Carol Berger, the plaintiff below, appeals from the judgment, dated August 25, 2004, entered following the denial of her post trial motion on July 1, 2004, in which she requested a new trial based on her and her trial counsel's allegation that a defense expert witness committed perjury. We affirm.

¶ 2 In a previous memorandum decision, we set forth the following factual and procedural recitation of the instant case:

[Ms. Berger] instituted this action against [William Schetman, M.D.], his professional corporation, and Lankenau Hospital based on an alleged misdiagnosis of a condition affecting Appellant's foot. Lankenau Hospital was dismissed prior to trial; the professional corporation was dismissed at trial.

In 1986, [Ms. Berger] was diagnosed with adult-onset diabetes and became insulin dependent. She also suffers from peripheral neuropathy, a condition that affects diabetic patients and results in a loss or absence of sensation in the hands and feet. On June 2, 1994, [Ms. Berger] became ill with a high fever and contacted the office of [Dr. Schetman], her family physician. She was prescribed an antibiotic and scheduled an appointment for Monday, June 6, 1994. On Saturday, June 4, 199[4], she noticed that her foot was swollen and black and blue, but due to the neuropathy, she did not feel pain, only discomfort.

At her scheduled appointment two days later, [Ms. Berger] presented to [Dr. Schetman] in a wheelchair. Her foot was swollen with significant pitting edema. [Dr. Schetman] ordered an ultrasound to eliminate deep vein thrombosis as a diagnosis but ordered no other diagnostic tests. When the ultrasound was negative, [Dr. Schetman] made a diagnosis of cellulitis, which is an infection of the tissue, prescribed antibiotics, and told [Ms. Berger] to stay off her feet.

From June 6, 1994, through July 19, 1994, [Ms. Berger] remained under [Dr. Schetman's] care. He saw her five times and also spoke to her on the telephone. Her foot remained swollen and uncomfortable during this period. [Dr. Schetman] continued to treat the condition as cellulitis.

On July 23, 1994, [Ms. Berger] traveled to Kansas to visit her brother. By July 29, 1994, her foot was extremely swollen and inflamed so she went to a doctor in Kansas for an evaluation. That doctor admitted her to the hospital and ordered various diagnostic tests, including an x-ray and bone scan. Those tests revealed a severely fractured foot. Specifically, [Ms. Berger's] navicular bone was so fractured that it had been partially absorbed by her body. As a result of this fracture, [Ms. Berger] is permanently disabled, had to retire from her teaching job, and no longer is able to live independently.

[Ms. Berger] alleged that [Dr. Schetman] negligently misdiagnosed her fractured foot and that his medical malpractice resulted in her permanent disability and loss of ability to live independently. The case proceeded to a jury trial. [Ms. Berger] presented two expert witnesses who opined that [Dr. Schetman's] failure to obtain diagnostic x-rays fell below the applicable standard of care and resulted in [Ms. Berger's] permanent disability. [Dr. Schetman] also presented the testimony of two expert witnesses, family physician George Romanzo and orthopedic surgeon Michael Snedden, in addition to his own testimony. The experts testified that [Dr. Schetman's] diagnosis and treatment of [Ms. Berger's] condition was not a deviation from the applicable standard of care. The jury rendered a verdict in favor of [Dr. Schetman].

After the jury deliberations were concluded, [Ms. Berger], her counsel [i.e., James E. Foerstner, Esq.], and the trial judge encountered each other in a hallway and engaged in a discussion. The record establishes that Dr. Romanzo was the trial judge's personal physician, and the trial judge acknowledges that after the defense verdict, a conversation occurred among the trial judge, [Ms. Berger], and her counsel.

[Ms. Berger] and her counsel filed affidavits about the contents of that conversation in support of her motion for post-trial relief. Those affidavits indicate the following:

[The trial judge] told us that he talked to defense expert, George Romanzo, M.D., who was "[the trial judge's] personal physician, and [the trial judge] said to him, 'Do you really believe this woman did not have a malpractice case'?"

As per [the trial judge], Dr. Romanzo said, "When I first read the records four years ago, I thought the case was defensible. However, after I reviewed the records for trial, I believe that this doctor committed malpractice."

The Judge also said that, "It seemed to me that he [Dr. Schetman] focused on the first diagnosis he had and never wanted to depart from that."

Affidavits of James E. Foerstner and Carol Berger, 11/9/01 and 11/8/01, at 2. [Ms. Berger] also recalled that after these statements, her counsel commented on professionals lying on the witness stand because they were paid to do so. The trial judge responded, "[T]hese things happen." Affidavit of Carol Berger, 11/8/01, at ¶ 12.

In her motion for post-trial relief, [Ms. Berger] essentially alleged that the trial

judge should not have permitted the trial to continue after his conversation with Dr. Romanzo since the trial judge became aware that this expert witness committed perjury by testifying that [Dr. Schetman] had not deviated from the applicable standard of care when Dr. Romanzo actually believed that such a deviation had occurred.

Before that motion was decided, [Ms. Berger] filed a motion asking the trial judge to recuse himself from consideration of that motion and a second motion requesting an evidentiary hearing. The trial judge declined to recuse himself, refused to hold an evidentiary hearing, and denied the motion for post-trial relief. In his opinion denying relief, the judge stated that the affidavits recount an inaccurate and distorted version of the conversation among the judge, counsel, and [Ms. Berger]. The judge indicates that he made statements that were intended to "console" counsel and his client after the adverse verdict and that nothing he stated "suggested perjury" on the part of Dr. Romanzo. Trial Court Opinion, 9/10/02, at 2, 3. This appeal followed the denial of [Ms. Berger's] motion for post-trial relief and entry of judgment on the verdict. *Berger v. Schetman*, No. 2365 EDA 2002, 833 A.2d 1141, unpublished memorandum at 1–5 (Pa.Super. filed August 11, 2003). In that first appeal, we determined that an evidentiary hearing was necessary to resolve the "significant and serious difference of opinion about the contents of the conversation among [Ms. Berger], her counsel, and the judge[,]" *id.* at 5, and the "dispute over what Dr. Romanzo said to the trial judge . . . ." *Id.* at 6. We further noted that "[i]f Dr. Romanzo told the trial judge that he thought that [Ms. Berger's] malpractice claim was valid, then Dr. Romanzo perjured himself by rendering a contrary opinion." *Id.* at 6. At that time, however, we could not determine whether Ms. Berger should get a new trial because of these unresolved factual disputes. Accordingly, we remanded the case for consideration of Ms. Berger's motion for post trial relief by a different trial court judge following an evidentiary hearing.

¶ 3 A different judge conducted an evidentiary hearing on April 8, 2004, and April 20, 2004. Ms. Berger, Mr. Foerstner, Dr. Romanzo, and the original trial court judge testified. The evidentiary court on remand concluded that Dr. Romanzo did not commit perjury but, rather, that the parties had "differing interpretations of what was said and what was meant in two out-of-court conversations that should not have taken place at all." Opinion and Order, 6/29/04, at 9. The court further concluded that the ex parte communications of the trial judge did not so taint the trial as to warrant a new trial. *Id.* at 11.

¶ 4 Ms. Berger took the instant appeal and argues (1) that the court held her to an unsustainable burden of proof to establish Dr. Romanzo's perjury, *i.e.*, the proof required in a criminal proceeding for perjury; and (2) that the court's decision on her post trial motion with regard to the content of the *ex parte* communications was against the weight of the evidence.[1]

¶ 5 Before examining these issues, we note:

1. Although Ms. Berger lists six issues in the "Statement of the Questions Involved" portion of her brief, she only presents argument on the two issues noted above. We will address only these two issues for which Ms. Berger has presented argument. *See* Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued. . . .").

In reviewing a trial court's decision to grant or deny a motion for a new trial, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. Moreover, a new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

... [W]e must first determine whether we agree with the trial court that a factual, legal or discretionary mistake was, or was not, made. If we agree with the trial court's determination that there were no prejudicial mistakes at trial, then the decision to deny a new trial must stand. If we discern that a mistake was made at trial, however, we must then determine whether the trial court abused its discretion in ruling on the motion for a new trial. A trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

*Atwell v. Beckwith Machinery Co.*, 872 A.2d 1216, 1221 (Pa.Super.2005) (quoting *Boucher v. Pennsylvania Hosp.*, 831 A.2d 623, 627 (Pa.Super.2003), *appeal denied*, 577 Pa. 705, 847 A.2d 1276 (2004)).

■ ¶ 6 First, Ms. Berger argues that the evidentiary hearing court, upon remand, held her to an unsustainable burden of proof by requiring her to establish that Dr. Romanzo committed perjury using the "two-witness rule," which is the standard employed in criminal proceedings to establish a charge of perjury. In its opinion filed pursuant to Pa.R.A.P. 1925(a), the hearing court stated that its task, upon remand, was to determine if Dr. Romanzo perjured himself. Trial Court Opinion (T.C.O.), 6/29/04, at 8. The court then set forth the language of the Crimes Code defining perjury, *i.e.*, "[a] person is guilty of perjury ... if in any official proceeding he makes a false statement under oath or equivalent affirmation, ... when the statement is material and he does not believe it to be true." 18 Pa.C.S. § 4902(a). The court also indicated, that to establish perjury, courts have relied on the two-witness rule. T.C.O. at 8. The two-witness rule in a perjury prosecution "requires proof of the [f]alsity element of the crime by the direct testimony of two witnesses or the direct testimony of one witness plus corroborating evidence." *Commonwealth v. Mervin*, 230 Pa.Super. 552, 326 A.2d 602, 604 (1974). The court concluded that because the only witnesses alleging perjury were Ms. Berger and Mr. Foerstner, neither of whom were present during the conversation the trial judge had with Dr. Romanzo, direct evidence of perjury was lacking for purposes of proof under the two-witness rule. T.C.O. at 9.

■ ¶ 7 In our assessment, it is improper to apply the two-witness rule, a burden placed on the prosecution in a criminal case to establish perjury under the Crimes Code, to a civil case where it is alleged, as grounds for a new trial, that a witness lied under oath. Pennsylvania has very little case law instructive on the circumstances before us but, of the civil cases we have examined, none have imposed on the complaining party the burden of establishing perjury via standards employed in criminal cases. *See, e.g., McCabe v. Pennsylvania R. Co.*, 311 Pa. 229, 166 A. 843 (1933) (employing abuse of discretion standard to conclude that clear evidence of plaintiff's lying under oath warranted new trial); *Guerrieri v. Tyson*, 147 Pa.Super. 239, 24 A.2d 468 (1942) (concluding defendant's

claim of newly discovered evidence in form of discovery of variation of plaintiff's witness's testimony following trial did not merit grant of new trial where verdict was not dependant on testimony and it was not probable that corrected testimony would change result). *See, generally,* G. Van Ingen, *Statements of Witness in Civil Action Secured After Trial, Inconsistent With His Testimony, as Basis for New Trial on Ground of Newly Discovered Evidence,* 10 A.L.R.2d 381 (1950).[2]

¶ 8 Nevertheless, despite the trial court's apparent citation to the two-witness rule in its Rule 1925(a) opinion, the remainder of the opinion reveals that the trial court did undertake the fact-finding mission assigned to it upon remand. Presented with the testimony of the trial judge and Dr. Romanzo, on one side, and the testimony of Ms. Berger and Mr. Foerstner, on the other, the trial court at the evidentiary hearing had before it the task of determining what Dr. Romanzo said to the trial judge in an ex parte conversation. *Cf. Factor, supra* (where variance in expert testimony memorialized during expert's trial testimony). As an appellate court, we are bound by the evidentiary hearing court's determination with regard to credibility of witnesses absent an abuse of discretion. *Metalized Ceramics for Electronics, Inc. v. National Ammonia Co.,* 444 Pa.Super. 238, 663 A.2d 762, 765 (1995). This brings us to Ms. Berger's second issue on appeal in which she argues that the evidentiary court's findings, concluding that Dr. Romanzo did not perjure himself at trial, were not supported by the weight of the evidence.

¶ 9 We cannot agree with Ms. Berger's position. The evidentiary hearing judge had the opportunity to evaluate the credibility of the four witnesses involved and had ample support to reach his conclusions. The evidentiary hearing judge determined that "the charges herein ar[o]se from misinterpretation of the two conversations.... The gravamen of the conversation between the judge and the doctor was that the case was winnable for [Ms. Berger], not that [Dr. Schetman] had breached the standard of care or committed malpractice." T.C.O. at 9–10. The court reiterated its finding that Ms. Berger and Mr. Foerstner "misconstrued and misinterpreted" what the trial judge told them about his conversation with Dr. Romanzo and that Ms. Berger and Mr. Foerstner "heard what they wanted to

---

2. Ms. Berger cites *Factor v. Bicycle Technology Inc.,* 550 Pa. 500, 707 A.2d 504 (1998), in support of her argument for a new trial. However, *Factor* presented strikingly distinguishable circumstances from those in the instant case. In *Factor,* our Supreme Court concluded that misleading testimony, purposely elicited by defense counsel from a defense expert in a product liability action should have been stricken and the plaintiff awarded a new trial. The plaintiff's attorney elicited stunningly different testimony from the defense expert on cross-examination, resulting in an *in camera* hearing where it was discovered that defense counsel engaged in a "deceitful performance" during direct examination to conceal the expert's change of opinion, which had occurred during the course of the trial as the expert listened to earlier testimony. The case did not involve allegations of perjury such as those claimed in the instant case. Also, the change in testimony occurred during trial, on the record, clearly revealed by effective cross-examination by plaintiff's counsel. In this case, Dr. Romanzo has not wavered from his position that he never told the trial judge that he thought malpractice had actually occurred, and the trial judge remains in agreement. Finally, in its decision to grant a new trial, the *Factor* Court specifically admonished defense counsel for "knowingly" concealing the expert's changed opinion and presenting testimony that counsel "knew was no longer true but was directly misleading." *Id.* at 507. No such misbehavior on the part of counsel is alleged in the instant case.

hear." *Id.* at 11. Thus, although the court concluded that Ms. Berger did not establish perjury by way of the two-witness rule, the court went on to make discrete credibility determinations, specifically finding the testimony of the trial judge and Dr. Romanzo to be credible.

¶ 10 The evidentiary hearing judge's conclusions are supported by the record. Although Ms. Berger's and Mr. Foerstner's testimony paralleled the version of the conversation with the trial judge as they recalled it in their affidavits, the details of which were described previously, the trial judge and Dr. Romanzo testified to a different version in which Dr. Romanzo did not waver from his expert opinion that Dr. Schetman did not deviate from the standard of care.

¶ 11 At the hearing, Dr. Romanzo testified that the trial judge initiated a conversation with him, following his testimony but before the jury's verdict, in the hallway outside of the courtroom. N.T. Hearing, 4/8/04, at 82–84. After a brief discussion about the judge's health, the judge initiated conversation about Ms. Berger's case. *Id.* at 83–85. Although Dr. Romanzo could not remember, verbatim, the judge's exact words, the judge essentially communicated that, of the medical malpractice cases he had before him lately, Ms. Berger's case "seemed to have some merit[.]" *Id.* In response, Dr. Romanzo communicated to the judge that "there was a possibility that the plaintiff[ ] could win this case" but at no time did he indicate that Dr. Schetman had committed malpractice or recant his trial testimony.· *Id.* at 93. When the judge asked what he meant by saying that there was a possibility that the plaintiff could win, Dr. Romanzo explained that "it depends upon the skills of the attorney .... What kind of sympathy the plaintiffs can evoke .... [a] number of things." *Id.* at 94. He ex-

plained that his statement had nothing to do with his opinion on whether malpractice had occurred, but rather with the "winability [sic] of the case" and he agreed that his comment was based on his belief that, just like any other case, there is a possibility that the patient will "win." *Id.* at ·94, 105. Dr. Romanzo reiterated that, during this ex parte communication, he "never said that Dr. Schetman was guilty of malpractice," he "never said that the case was indefensible[,]" and he did not "recant anything that [he] said on the stand under oath." *Id.* at 124.

¶ 12 The trial judge testified on the second day of the evidentiary hearing, April 20, 2004. He admitted to approaching Dr. Romanzo during a break, following the completion of Dr. Romanzo's testimony, and engaging in an ex parte communication. N.T. Hearing, 4/20/04, at 9. He recounted the contents of the second ex parte communication he had with Ms. Berger and Mr. Foerstner following the defense verdict, which varied considerably from their version. *Id.* at 15. According to the judge, he saw them outside of the courtroom and noticed that Ms. Berger was "hysterically crying and upset" and that Mr. Foerstner was "trying to console her but he was absolutely, lividly white hot with rage at the verdict." *Id.* The judge testified about what he did upon encountering the upset Ms. Berger and Mr. Foerstner:

As a human being, I felt that I had to swage [sic] her upset and console her..... I said I thought you had a pretty good plaintiff's negligence case, which didn't matter one way or the other. I wasn't the jury, but I kind of indicated what my state of mind would have been had I been a juror.

. . .

I told them that when Doctor Romanzo finished testifying and the break was

called, and I came out of my chambers ... that [Dr. Romanzo] was still standing there waiting for an elevator. And then we exchanged pleasantries.... He asked how I was and how my health was.

...

I said to [Mr. Foerstner] that I told Doctor Romanzo that I thought it was a pretty good plaintiff's negligence case. And he replied to me that his report was determined on the basis of the materials submitted to him at that time. And that in reviewing those materials there was not a scintilla of evidence of medical mal-practice.

And then I said, well, there was testimony that there was no x-ray taken. He said in preparing for my testimony and reviewing what I initially had and what was subsequently given to me, my testimony in the courtroom was my opinion. And my opinion was that there was no medical mal-practice.... I further said, well, what about the x-ray.

...

I had said to Romanzo what about the x-ray, wasn't that some indication of medical malpractice. He said I can't completely disagree with you, which meant in my opinion that I was reacting as a laymen [sic] and that in his medical opinion and medical training that there was no medical mal-practice. And further that had there been an x-ray, that the case would never have been brought.

*Id.* at 18–20. The judge also testified to his understanding of Dr. Romanzo's comments:

I interpreted that comment as indicating that my pursuing him with regard to the x-ray was a lay reaction and not a professional reaction on the basis of all the other testimony and materials he had reviewed. I also took it to mean that had an x-ray been taken, the case would

have gone away, that there wouldn't have been any case at all.

*Id.* at 12. The judge further testified, in response to the following question:

Q. When Doctor Romanzo told you that he could not completely disagree or use that phrase, that I can't completely disagree with that, did you in your own mind consider whether that in anyway suggested that the degree of certainty with which he had testified on that point in the trial was different from the degree of certainty with which he had described his opinion for you at the elevator?

A. No, because I think that Doctor Romanzo was being polite to me as a patient of his and also polite to me in saying you're not full of bologna.....

*Id.* at 27–28. The judge testified that after he conveyed the above content of his conversation with Dr. Romanzo to Ms. Berger and Mr. Foerstner, Mr. Foerstner "jumped up .... [a]nd he said he lied. He lied." *Id.* at 22. In response, the judge said "nobody said that [Dr. Romanzo] said there was medical mal-practice. I never said that to you. [Mr. Foerstner] was like already convinced that was the case, regardless of what I said and you know the motivation." *Id.* The judge told Mr. Foerstner that Dr. Romanzo did not lie and never stated that there was any medical malpractice. *Id.* at 23. The judge testified that Mr. Foerstner then indicated that he would file a motion and the judge said, "fine, you do whatever you have to do." *Id.*

¶ 13 In support of her argument that the evidentiary hearing judge abused his discretion by crediting Dr. Romanzo's and the trial judge's testimony, Ms. Berger points to the consistency between her recollection and Mr. Foerstner's recollection, and she points out various inconsistencies

between the judge's recollection and Dr. Romanzo's recollection. For example, she argues that the trial judge revealed to them that Dr. Romanzo thought the case was defensible when he initially reviewed it four to five years prior to trial, whereas the judge and Dr. Romanzo testified that they never discussed the timing of his initial review. *See* Ms. Berger's brief at 18–19. She argues that she and Mr. Foerstner would not have known about the timing of Dr. Romanzo's initial review and his more current review, *i.e.,* prior to trial with the benefit of additional materials, if the judge had not told them, thereby seeking to validate her version of events. However, the evidentiary hearing judge found this argument unpersuasive because the timing of Dr. Romanzo's initial review was not "unusual or mysterious" in that experts initially review records prior to trial (and Dr. Romanzo's report, which had been available to Ms. Berger, was dated three years prior to trial), and an expert's review of those materials and any other materials normally occurs closer to trial.

¶ 14 By way of further example, Ms. Berger argues that the trial judge revealed to her and Mr. Foerstner his experience as a criminal trial attorney and his opinion, based on that experience, that "some people lie on the stand." *See id.* at 21 (quoting Mr. Foerstner's recollection of the judge's words). Ms. Berger argues that the judge's comment must have necessarily occurred in the context of a conversation about an expert, *i.e.,* Dr. Romanzo, who testifies falsely, and again, Ms. Berger attempts to validate her version of the conversation by arguing that the trial judge did indeed have experience as a

criminal attorney, as she had recalled him saying. *Id.*[3] The evidentiary hearing judge found this argument equally unpersuasive in that information about a judge's background is available from public sources such as Martindale Hubbell, and trial counsel routinely acquire this information about trial judges prior to trial. T.C.O. at 10.

¶ 15 In this regard, we are reminded that "[t]he fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Nicholson v. Johnston,* 855 A.2d 97, 102 (Pa.Super.2004) (citation omitted), *appeal denied,* 868 A.2d 453 (Pa.2005). The evidentiary hearing judge considered the inconsistencies argued by Ms. Berger and found them unpersuasive. Moreover, in crediting the version of the ex parte communication as recalled by the trial judge and Dr. Romanzo, the evidentiary hearing judge could reasonably conclude, as he did, that "the charges herein [arose] from misinterpretation of the two conversations.... The gravamen of the conversation between the judge and the doctor was that the case was winnable for [Ms. Berger], not that [Dr. Schetman] had breached the standard of care or committed malpractice[,]" and that "the conversations were misconstrued and misinterpreted, and that [Ms. Berger] and [Mr. Foerstner] heard what they wanted to hear." T.C.O. at 9–11.

¶ 16 For the foregoing reasons, we conclude that the evidentiary hearing judge did not abuse his discretion by denying Ms. Berger's motion for a new trial. The

---

**3.** Specifically, Ms. Berger asserts that "[d]espite [the trial judge's] adamant denial that he had told Mr. Foerstner of his experience with witnesses, including those in criminal cases, who frequently testify falsely, Mr. Foerstner somehow managed to know that [the trial judge], prior to his 22 years on the bench, had been a criminal defense attorney and, in connection with his criminal work experience, had encountered witnesses who testified falsely." Ms. Berger's brief at 22.

record supports the hearing judge's conclusion, in its role as factfinder, that Dr. Romanzo did not lie at trial.

¶ 17 Judgment affirmed.

¶ 18 Judge OLSZEWSKI files a concurring statement.

## CONCURRING STATEMENT BY OLSZEWSKI, J.:

¶ 1 I concur with the majority's well-reasoned opinion in this matter. I write separately only to express my great concern over the improprieties of the underlying *ex parte* communications at issue here.

¶ 2 First, I agree that it is improper to apply the two-witness rule of criminal perjury cases to a civil case where it is alleged, as grounds for a new trial, that a witness lied under oath. Second, I agree that there was no abuse of discretion in the trial court's denial of appellant's motion for a new trial, as the finding that the underlying communications were misinterpreted by appellant and her counsel was supported by the trial court's specific determinations.

¶ 3 Nevertheless, while we are constrained by the facts of this case, the applicable law in this matter, and the standard of review on appeal, I feel that the conversation between the trial judge and the defense expert witness (the trial judge's own personal physician), as well as the conversation involving the trial judge, the plaintiff, and her counsel, were entirely inappropriate. As the trial court noted, these conversations "should not have taken place at all." Opinion and Order, 6/29/04, at 9. Certainly a trial judge should not be prevented from exchanging pleasantries with persons outside of court; however, specific communications about in-court legal matters are not acceptable ex parte topics of conversation, and such communication should not be repeated or condoned.