J-A10028-22

2022 PA Super 110

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                    PENNSYLVANIA
:
v.                        :
:
:
:
BUCHANAN AUTOMOTIVE          :
:
Appellant             :     No. 1218 MDA 2021


Appeal from the Judgment of Sentence Entered August 26, 2021,
in the Court of Common Pleas of Franklin County,
Criminal Division at No(s):  CP-28-SA-0000064-2021.


BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.:                    **FILED JUNE 14, 2022**

Buchanan Automotive, Inc. (Buchanan) appeals from the judgment of
sentence entered following its summary conviction for violating the Board of
Vehicles Act (BVA), 63 P.S. §§ 818.101–818.704.  The trial court convicted
Buchanan of "[e]mploying any person as a salesperson who has not been
licensed as required."  63 P.S. § 818.318(15).[1]  We must determine whether
Buchanan's employee, who merely signed three documents required for a car
sale, acted as a "salesperson" within the meaning of the Act.  We hold that
she did not.  Accordingly, we reverse.

_____

[1] 63 P.S. § 818.328(a) provides that violating the BVA is a summary offense
with a $1000 fine.  Under a prior version of the BVA, a licensed dealer like
Buchanan could not have been subject to summary proceedings.  ***See
Commonwealth v. McConley***, 754 A.2d 724, 728–29 (Pa. Cmwlth. 2000).
After ***McConley***, the legislature amended the BVA to allow such prosecutions.
Act No. 2000–75, § 4 (H.B. No. 2200).  Because the Commonwealth criminally
prosecuted Buchanan, we have jurisdiction.  ***See*** 42 Pa.C.S.A. § 742.

The trial court explained the facts of the case:

On May 21, 2020, Ashley Chamberlain purchased a 2018 Mitsubishi Escape from [Buchanan], an automotive dealership in Waynesboro, Franklin County, Pennsylvania. While the transaction itself went smoothly, Ms. Chamberlain encountered a variety of issues once she drove the vehicle off the lot. Aside from problems surrounding the car loan, Ms. Chamberlain found herself unable to renew her registration in the beginning of 2021. The dealership investigated the issue and found that there had been a typographical error caused by PennDOT preventing the registration renewal. Ms. Chamberlain spent some time trying to solve the issue but, after running into several brick walls, became exasperated enough to contact the police.

\* \* \*

When the police began to investigate Ms. Chamberlain's May 21, 2020 transaction, they reviewed the Certificate of Title. The individual listed on the Certificate of Title as "seller" was named Ashley Flohr. On a form submitted to PennDOT, Form MV-4ST, Ashley Flohr [signed for Buchanan as "issuing agent" for registration purposes.[2]] On the Bill of Sale in the signature box for the representative of the dealership or seller to sign, Ashley Flohr's signature appears.[3] The police investigation revealed that Ashley Flohr is not licensed to sell vehicles for [Buchanan. Trooper John Frick cited Buchanan for violating the BVA, and the Magisterial District Judge found Buchanan guilty. Buchanan appealed to the Franklin County Court of Common Pleas, which held a trial *de novo* on August 26, 2021].

Ms. Chamberlain testified that she never dealt with Ashley Flohr during the transaction[,] and Ashley Flohr did not testify. Thus, the only testimony which shed any light on how Ashley Flohr's signature found[] its way into boxes marked for sellers came from the agent representative of [Buchanan]. Gregory A. Kennedy, the general manager of [Buchanan]'s dealerships, testified that Ashley Flohr is employed by the dealership as its

---

[2] This section of the Form MV-4ST, Commonwealth's Exhibit 2, certifies that the issuing agent verified that the vehicle was insured and gave a registration plate to the buyer.

[3] The bill of sale, Commonwealth's Exhibit 1, lists the salesperson as "house."

"financial administrator," which is a clerical position. Though Mr. Kennedy did not testify as to how long the dealership had employed Ashley Flohr, [Buchanan] admitted her job description into evidence[,] which describes her position as an "experienced clerical position" and "experienced admin." Mr. Kennedy testified that Ashley Flohr mistakenly signed the paperwork in Ms. Chamberlain's transaction because she signs the PennDOT paperwork and signed the buyer's order as well. No other evidence of Ashley Flohr's involvement in the transaction was presented.

Trial Court Opinion, 10/29/21, at 1, 3–4 (footnotes omitted). The trial court found Buchanan guilty and imposed the mandatory fine of $1000. 63 P.S. § 818.328(a). Buchanan timely appealed. Buchanan and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[4]

Buchanan raises the following issues:

A. Whether the trial court erred in concluding that the Commonwealth met its burden of proving beyond a reasonable doubt that Buchanan Automotive, Inc. employed an unlicensed salesperson?

B. Whether the trial court erred as a matter of law in concluding that the activity engaged in by Ashley Flohr constituted "buying, selling or exchanging" as that phrase is used in the Board of Vehicles Act?

Buchanan's Brief, at 4 (capitalization omitted).

Our resolution of Buchanan's second issue disposes of this appeal. The BVA prohibits a licensed dealer from "[e]mploying any person as a salesperson who has not been licensed as required." 63 P.S. § 818.318(15); *see* 63 P.S. § 818.328(a) (prescribing that violating the BVA is a summary offense with a

---

[4] The Commonwealth filed a letter stating that it agrees with the trial court.

mandatory fine of $1000). A "salesperson" is "[a]ny person who, for a commission, compensation or other consideration, is employed by a dealer to buy, sell or exchange one or more new or used vehicles." 63 P.S. § 818.102. "Buying, selling, or exchanging" is in turn defined to include "listing, offering, auctioning, advertising, representing or soliciting, offering or attempting to solicit or negotiate on behalf of another a sale, purchase or exchange or any similar or related activity." *Id.*

Here, the trial court concluded that Ms. Flohr was a salesperson; it reasoned that because she signed three documents "in spots designated for the seller and/or representative of the dealership," she "represented" the vehicle on behalf of Buchanan. Trial Court Opinion, 10/29/21, at 5–6; *accord* N.T., 8/26/21, at 63–64.

Buchanan argues that what Ms. Flohr did was not "representing" a car for sale as that term is used in the BVA. Buchanan points to Black's Law Dictionary, which defines representation first as "[a] presentation of fact — either by words or by conduct — made to induce someone to act, esp. to enter into a contract; esp., the manifestation to another that a fact, including a state of mind, exists." *Representation*, **Black's Law Dictionary** (11th ed. 2019).[5] As applied, Buchanan argues that Ms. Flohr's act of signing the documents did not present or manifest anything to Ms. Chamberlain, who never met or interacted with Ms. Flohr when she bought the car. Buchanan's Brief, at 26;

---

[5] The other four definitions are not relevant.

*see* N.T., 8/26/21, at 8. Finally, Buchanan asserts that a contrary interpretation is inconsistent with the BVA's purpose for requiring salespersons to be licensed "[t]o promote the public safety and welfare." 63 P.S. § 818.303(a).

> For a question of statutory interpretation,
>
> our standard of review is *de novo*, and our scope of review is plenary. In construing a statute, a court's duty is to give effect to the legislature's intent and to give effect to all of the statute's provisions. 1 Pa.C.S.[A.] § 1921(a). The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage. Courts must give effect to a clear and unambiguous statute and cannot disregard the statute's plain meaning to implement its objectives. Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.

*Commonwealth v. Chesapeake Energy Comm'n*, 247 A.3d 934, 942 (Pa. 2021) (citations and quotations omitted). We construe words that "have acquired a peculiar and appropriate meaning" according to that meaning. 1 Pa.C.S.A. § 1903(a).

The BVA does not explicitly define "representing." Using familiar tools of statutory interpretation, we find that Buchanan's definition reflects the legislature's intent. That is, we find that when the General Assembly provided that "buying, selling or exchanging" a vehicle includes "representing" a vehicle, it intended "representing" a vehicle to mean presenting a fact about that vehicle to a consumer.

This meaning of "representing" corresponds with the meanings of other terms included in the definition of "buying, selling or exchanging." *See Commonwealth v. Melvin*, 103 A.3d 1, 54 (Pa. Super. 2014) (referencing surrounding provisions to determine the meaning of a phrase). Relevantly, a person who is "listing, offering, auctioning, advertising, . . . or soliciting" a vehicle or who is "offering or attempting to solicit or negotiate on behalf of another a sale, purchase or exchange" of a vehicle is communicating with consumers about that vehicle (or trying to do so). We construe "representing" likewise based on the surrounding provisions.

This construction matches the normal sense of "representing" in the context of vehicle sales. Cases involving car sales use "representing" to mean telling a consumer about a car. *E.g.*, *Commonwealth v. Pappas*, 845 A.2d 829, 838 (Pa. Super. 2004) (a dealer "represented" the quality of cars to buyers when he told them the cars were good and clean); *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 605 A.2d 373, 376 (Pa. Super. 1992) (a dealer "represented" a car as new by holding it out to a buyer as such); *see also O'Rourke v. Blocksom*, 69 Pa.Super. 93, 97–99 (1918) (a seller's statement in an advertisement that a car had a new motor was a "representation" to the buyer).

We also note that regulations promulgated under the BVA use the term "representing" in the context of advertising to consumers. For example, Section 19.22(4) provides for investigation of a person who makes a vehicle advertisement containing "an assertion, representation, or statement of fact

- 6 -

which is untrue, deceptive or misleading". 49 Pa. Code § 19.22(4). Section 19.22(6) provides for investigation of a person who "has represented that he is selling at wholesale in any form of sale or advertising". *Id.* § 19.22(6).

Additionally, reading "representing" to mean presenting a fact to a consumer aligns with the legislative purpose of protecting consumers. The BVA requires salespersons to be licensed "[t]o promote the public safety and welfare," which generally protects car buyers from fraud and deception, assuring consumers that dealers "must provide fair service and reliable products." ***Kerbeck Cadillac Pontiac, Inc. v. State Bd. of Vehicle Mfrs., Dealers and Salespersons***, 854 A.2d 663, 673 & n.9 (Pa. Cmwlth. 2004) (*en banc*) (quoting Section 5(a) of the BVA, now numbered 63 P.S. § 818.303(a)). Empowering the Board to control who can present a fact about a vehicle to a consumer thus helps promote the public safety and welfare. As such, construing "representing" to involve presenting facts to consumers aligns the BVA to the mischief that it remedies. 1 Pa.C.S.A. § 1921(c)(3).[6]

We therefore hold that "representing" a vehicle under the BVA, 63 P.S. § 102, is logically defined as presenting a fact about that vehicle to a consumer. A person who, by words or conduct, presents a fact about a vehicle to a consumer therefore is "buying, selling or exchanging" within the definition of salesperson. *Id.*

---

[6] We note that Ms. Flohr's unlicensed status did not cause the PennDOT error that led Ms. Chamberlain to contact the police in the first place.

As applied to this case, the trial court found that Ms. Flohr signed three documents required to sell a car to Ms. Chamberlain—a certificate of title, a PennDOT Form MV-4ST, and a bill of sale.[7]  Ms. Flohr did not meet or interact with Ms. Chamberlain.  Importantly, there was no evidence that Ms. Flohr ever presented any facts about the car to Ms. Chamberlain.  Therefore, we find that Ms. Flohr's conduct was not "representing" the car, and that Buchanan did not employ Ms. Flohr "as a salesperson."  63 P.S. § 818.318(15).  As such, we vacate Buchanan's judgment of sentence and reverse its conviction.

Judgment of sentence vacated.  Conviction reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/14/2022

_____

[7] As noted, the bill of sale lists the salesperson as "house."  The documents list Buchanan as seller and as issuing agent for registration, and Ms. Flohr signed for Buchanan.